## CITY OF NEW YORK v. THIRD NAT. BANK OF JERSEY CITY.

(Circuit Court of Appeals, Second Circuit.   February 9, 1915.)

No. 125.

1. TRIAL ☞177—DIRECTED VERDICT—EFFECT.

Where both parties moved for a directed verdict, all controverted issues of fact are conclusively determined in favor of that party for whom the verdict was directed.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 400; Dec. Dig. ☞ 177.

Operation and effect of motions by both plaintiff and defendant for direction of verdict, see note to Lare v. Scatcherd, 77 C. C. A. 8.]

2. MUNICIPAL CORPORATIONS ☞364—IMPROVEMENTS—CONTRACTS—FORFEITURE —BREACH BY OTHER PARTY.

Where a city had failed to observe the requirements of the contract for payments to be made to the contractor on certain dates, it could not avail itself of the right given it by the contract to declare it forfeited for delinquency by the contractor.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 897; Dec. Dig. ☞364.]

3. MUNICIPAL CORPORATIONS ☞364—CONTRACTS—FORFEITURE—BREACH BY OTHER PARTY—EXCUSE.

The fact that the statutes regulating the payment of money by the city were such that the payments could not be made within the time called for by the contract, while it might relieve the city from liability for damages for the delay, does not excuse its breach, so as to entitle it to enforce the forfeiture provision against the contractor.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 897; Dec. Dig. ☞364.]

4. MUNICIPAL CORPORATIONS ☞374—CONTRACTS—MODIFICATION—COURSE OF BUSINESS.

The fact that a contractor had for several years past received payment from the city on his contracts at dates later than those provided in the contracts does not show a course of business modifying the contract, where there was evidence that the contractor frequently urged the city authorities to make the payments more promptly, as he needed the money to perform his contract.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 905, 910; Dec. Dig. ☞374.]

5. MUNICIPAL CORPORATIONS ☞373—IMPROVEMENTS—LIENS FOR LABOR AND MATERIALS—PRIORITY—ASSIGNMENTS.

Liens claimed for labor and materials furnished to a city contractor are subject to assignments of amounts due under the contract, which were filed before the lien claims.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 913; Dec. Dig. ☞373.]

6. MUNICIPAL CORPORATIONS ☞374—CONTRACTS—ACTIONS FOR BREACH— PLEADING—LIENS.

A city must specially plead a provision of the contract authorizing it to retain money to pay liens, if it intends to rely thereon as a defense to an action on the contract.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 905, 910; Dec. Dig. ☞374.]

In Error to the District Court of the United States for the Southern District of New York.

This cause comes here upon writ of error to review a judgment of the District Court, Southern District of New York, in favor of defendant in error, which was plaintiff below. The judgment was entered upon a verdict directed by the court.

Frank L. Polk, Corp. Counsel, of New York City (Terence Farley and E. Crosby Kindleberger, both of New York City, of counsel), for plaintiff in error.

Robert Mazet, of New York City (L. Laflin Kellogg and Alfred C. Petté, both of New York City, of counsel), for defendant in error.

Before LACOMBE, COXE, and ROGERS, Circuit Judges.

LACOMBE, Circuit Judge. The Waterfront Improvement Company had a contract for five years with the city of New York for furnishing scows and carrying away ashes and street sweepings. By its terms the company was to be paid monthly 90 per cent. of the prices specified for work done during the preceding month. Certificates of the amount of such work were to be given by the department of street cleaning on the 5th day of the month ensuing that in which the work was done and payment of the 90 per cent. was to be made 10 days thereafter. The remaining 10 per cent. was to be paid within 30 days after December 31st of the year in which work was done.

The Third National Bank held assignments of moneys earned by the contractor for the months of January, February, March, and April, 1911. That work was done during those months is not disputed. Certificates of the amount of work done, and of amount due for each of these months were signed by the commissioner of street cleaning on May 24, 1911, for January, February, and March, and on June 15, 1911, for April. The first three of these certificates were dated February 1st, March 1st, and April 1st, and the fourth April 13th.

Plaintiff brought suit to recover for the work done between January 1 and April 13, 1911, on which latter date the contractor was put off the work by the city. There seems to be no conflict as to the amounts claimed; the defense being delay by the contractor and consequent abrogation of the contract by the city under a clause of the contract numbered O. After having terminated the contract the city procured the work to be done elsewhere at a greatly increased expense, which exceeded the amounts at contract prices of the work done by the contractor between January 1st and April 13th.

[1] Both sides moved for the direction of a verdict; neither side asked to go to the jury. If, therefore, there be any disputed question of fact in the case, the same has by direction of the verdict been settled conclusively in favor of the plaintiff. There are some statements in the brief of plaintiff in error as to the contractor's failure to remove ashes, as to his men being on strike, etc.; but we find no testimony bearing on these details. The main reliance of defendant is clause O and the certificates made under it. That clause reads:

"(O) If the work to be done under this contract shall be abandoned by the contractor, or if this contract shall be assigned, or the work sublet by him, otherwise than is herein specified, or if at any time the superintendent shall

be of the opinion and shall so certify in writing to the commissioner that the performance of the contract is unnecessarily or unreasonably delayed, or that the contractor is willfully violating any of the conditions or covenants of this contract, or specifications, or is executing the same in bad faith, or not in accordance with the terms thereof, the commissioner shall have the power to notify the contractor to discontinue all work, or any part thereof, under this contract, by a written notice to be served upon the contractor, either personally or by leaving said notice at his residence, or with his agent in charge of the work, or with any employé found on the work, and thereupon the contractor shall discontinue the work, or such part thereof as the commissioner shall designate, and the commissioner shall thereupon have the power and is hereby authorized to procure in the manner prescribed by law such and so much of the work to be performed as may be necessary to fulfill this contract, and to charge the costs and expenses thereof to the contractor and the costs and expenses so charged shall be deducted and paid by the city out of such moneys as may be due or may at any time thereafter grow due to the contractor under and by virtue of this contract; and in case such costs and expenses shall exceed the amount which would have been payable under the contract if the same had been completed by the contractor, then the contractor shall and will pay the amount of such excess to the city; and in case such costs and expenses shall be less than the sum which would have been payable under this contract if the same had been completed by the contractor, then the contractor shall forfeit all claim to the difference."

Certificates in the form prescribed by this clause, signed by the superintendent and by the commissioner of street cleaning, were put in evidence, and it was contended by the defendant that as a consequence the contract was discontinued and moneys earned under it forfeited.

[2] The difficulty with defendant's case is that on April 13th the city had no right to make and enforce any such certificate of termination of the contract, because on that day it was itself in default, having failed to carry out its own obligations to pay on the 15th of each month the 90 per cent. due for work done during the preceding month. It had not paid for work done in January and February, and was therefore in no position to declare the contract terminated. Graf v. Cunningham, 109 N. Y. 369, 16 N. E. 551; Snyder v. City of New York, 74 App. Div. 421, 77 N. Y. Supp. 637.

[3] There is no merit in the suggestion that it is a municipal corporation having a vast number of financial concerns to attend to, and is regulated by provisions of statutes, etc., which require the obtaining of certificates and signatures by many different officers before its comptroller can pay out money, and that therefore it is impracticable for it to make a certificate of work done within 5 days after the ending of a month, or to draw its check for payment within 15 days after date. If such be the fact, it would seem wiser for it to provide in its contracts for longer periods of time in which to perform its obligations thereunder. When it chooses to agree to certify on the 5th and to pay on the 15th of a month, it is in default for not doing so, as any other party to a like contract would be. Reasonable excuse for such default may afford good ground for relieving it from some claim for damages therefor; but while itself in default it cannot avail of these drastic provisions of the contract, and thus abrogate it, to the contractor's heavy loss, by the certificates of its own officers.

[4] Defendant contends that by the course of business between the parties the provisions of the contract as to date of payment had become a dead letter. In support of this contention it offered a number of receipts signed by plaintiff for monthly installments falling due under the contract in prior years. They showed that for upwards of a year the city was uniformly behindhand in the payment of its indebtedness accruing under this contract. Quite naturally the assignee very gladly took the money due it whenever it could get it and receipted for each payment when made. What might be the effect of these payments and receipts as proving a course of business modifying the contract need not be discussed. On February 3, 1911, when three days had passed without the certificate for January work being signed, and when payment for such work, under the terms of the contract, was due a week later, the president of the contractor wrote to the commissioner, in terms which could leave no doubt, that the money then coming due was needed, and that unless payments were promptly made he would have to suspend work. We fully concur with the Trial Judge that, in view of this letter, evidence as to dates of payment of installments coming due in prior years was unimportant. Moreover the president of the contractor testified that during the months of February, March, and April, 1911, he called upon the commissioner every week and sometimes twice a week, asking him to hurry up the certificates, without which the comptroller's office could not make payments.

[5, 6] Exception was taken to the exclusion of certain liens filed by persons claiming to have furnished labor or materials. All these were filed subsequent to the filing of the several assignments to plaintiff, which therefore took precedence. Brace v. City of Gloversville, 167 N. Y. 452, 60 N. E. 779; McKay v. City of New York, 46 App. Div. 579, 62 N. Y. Supp. 58. If the city intended to defend on the ground that under some special clause of the contract it had a right to retain moneys due by reason of the filing of liens such defense should have been specifically pleaded; but no such defense was set up in answer.

Judgment affirmed.