## TANNER v. BALLARD & BALLARD CO., Inc.

(Circuit Court of Appeals, Second Circuit. May 18, 1921.)

No. 191.

1. Appeal and error ⟺997(3)—Where case is submitted on requests for directed verdict, findings of fact are conclusive.

Where a case is submitted on requests by both parties for directed verdict, all controverted issues of fact are conclusively determined in favor of the party whose motion is granted.

⟺For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**2. Sales ⟨⟩174—Contract terminated, where through buyer's default delivery cannot be made within time fixed.**

Under the settled rule that time is of the essence of executory commercial contracts, where by prior agreement all contracts for sale of flour by defendant, to be shipped to plaintiff at New York for export, were subject to embargoes by the railroad companies, which, owing to war conditions, refused to accept export shipments unless assured of prompt unloading, and plaintiff was required to make the shipping arrangements, his failure to secure such arrangement for a shipment due under a contract before the time fixed for delivery therein expired, *held* to relieve defendant from further obligation thereunder.

In Error to the District Court of the United States for the Southern District of New York.

Action at law by Wilson P. Tanner against the Ballard & Ballard Company, Incorporated. Judgment for defendant, and plaintiff brings error. Affirmed.

Haight, Sanford & Smith, of New York City (Daniel Day Walton and Lemuel Bannister, both of New York City, of counsel), for plaintiff in error.

Harrington, Bigham & Englar, of New York City (Valentine Taylor, of New York City, of counsel), for defendant in error.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

HOUGH, Circuit Judge. [1] At the close of all the evidence both parties moved for a directed verdict. It follows that whatever controverted issues of fact are revealed by the record are for our purposes conclusively determined in favor of the party whose motion was granted. City v. Third Nat. Bank, 221 Fed. 175, 137 C. C. A. 75, certiorari denied 238 U. S. 628, 35 Sup. Ct. 791, 59 L. Ed. 1496. In any usual sense of the phrase, however, there is no controversy over the facts; there is but a difference of opinion as to the inferences to be drawn from uncontradicted evidence.

[2] Plaintiff is a flour merchant in New York; defendant a milling company in Kentucky. This action is to recover damages for defendant's failure to deliver certain flour in accordance with contracts contained in letters and telegrams exchanged between the parties. The contract on which plaintiff rests his first cause of action is expressed in two telegrams, one from Tanner to Ballard, reading:

"Offer four dollars eighty-five cents bulk New York export shipment within thirty days our option (then follows the quantity and description of the flour) subject to your immediate reply by telegram."

The same day Ballard replied to Tanner:

"Will accept four dollars ninety cents shipment from mill week commencing twenty-eighth the best that can be done. Answer by telegraph immediately."

This Tanner did accept by telegraph at once.

Plaintiff's second cause of action arises from a contract that began with a telephonic conversation between the parties, following which Tanner telegraphed to Ballard:

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

"Confirm telephone purchase [here follows description of flour] four dollars sixty-five cents bulk New York export, four dollars fifty-five cents Newport News delivery seller's option June."

To this message Ballard replied by mail:

"Beg to confirm long-distance 'phone conversation between your good self and the writer, by which we sold you [here quantity and grade of flour are repeated] at four dollars sixty-five cents per barrel bulk New York (export rate), four dollars fifty-five cents Newport News—shipment from mill our option during the last half of June."

By admitted agreement between the parties these times for delivery were extended until July 15, 1916, before which date defendant shipped rather less than one-half of the flour called for by the two contracts and then refused to ship further. Suit is for failure to deliver the balance. It appeared, however, that the dealings in flour between plaintiff and defendant had begun, and had been substantially continuous since, at the latest, January, 1916, and from such letters it appears that Ballard stated in January, "any order taken would be subject to an embargo on flour at the port of New York." To which Tanner replied:

"We have adopted a policy of neither buying nor selling an ounce of flour until we have the freight room engaged."

Thereafter, and before any order was given and accepted, Ballard wrote again:

"Let it be understood that in any trading between us your orders are taken subject to embargoes on the part of the railroad companies entering the port of New York or any other Atlantic and Gulf port."

To which Tanner promptly replied:

"We note that any orders you take from us are subject to embargo. This is satisfactory to us, as embargoes are something we can gain knowledge of from our end, frequently in advance of such embargoes, and we can plan accordingly."

It was after this interchange of letters that several orders were given by Tanner, accepted by Ballard and shipments made accordingly. This suit arises upon the last of the contracts and out of the admitted existence of what in the correspondence is called a "railroad embargo."

By evidence uncontradicted it appeared at trial that the word "embargo" meant, and was known to mean by the parties to this action and by the commercial world, that in the spring and summer of 1916 the movement of freight toward Atlantic seaboard destined for export to a Europe occupied by war was so great that railway lines refused to transport all the goods offered them, and particularly refused to accept freight intended for export, unless assured beforehand that it would be promptly unloaded at the seaboard terminal. This practically meant that shippers were obliged to satisfy land carriers that their ocean freight space was ready and waiting.

The court below held that the contracts in suit were made with this knowledge and on the underlying agreement between the parties: (1) That a railway embargo or refusal to accept was always good reason for not shipping; (2) that it was Tanner's duty under this agreement

to make the shipping arrangements and notify Ballard when and as any embargo on the flour in question was lifted; so that (3) unless Tanner succeeded in procuring the railway carriage before the expiration of the time limit agreed upon, he had committed a breach of the contracts in suit.

In these rulings we think the trial court was right. The Ballard Company proved its willingness to ship, and Tanner admitted that he could get no permit to ship that remainder of the contract quantity in respect of which this action is brought. The proposition of plaintiff in error is that the effect of the railway embargo was but to create an excusable delay in performance and did not work a discharge of obligation; in other words, that, assuming the contract to be subject to embargo, such impediment, when it arose, merely postponed performance, the contract was not terminated, and performance within a reasonable time should be deemed sufficient.

But courts are bound by law to look first at the written language of the contract-making parties, and we have no doubt that the contract between these parties is to be spelled out of the whole series of letters, beginning with those of January, which substantially read the embargo limitation into all the subsequent contracts, to the last written extension, which carried the time of performance to July 15th. Throughout all this correspondence there is nothing to take this contract out of the settled rule that in an executory commercial agreement time is of the essence. Norrington v. Wright, 115 U. S. 188, 6 Sup. Ct. 12, 29 L. Ed. 366; Dorrance v. Barber & Co. (C. C. A). 262 Fed. 489. The time finally fixed was July 15th. Defendant refused to extend that time. The agreement of January (underlying the contracts in suit) was that Tanner should procure the goods to be moved by rail before that date, and to that essential agreement the law holds him.

It is quite true, as proven at trial, that if there were nothing except the telegrams and letters of May, 1916, above referred to, it would have been the duty of the seller to move the goods and deliver them at the named shipping ports; but the January correspondence fixed the preliminary duty of "lifting the embargoes" on Tanner. This he was unable to do in time, and therefore the defendant was relieved of its obligation on July 15th.

Judgment affirmed, with costs.