(74 App. Div. 421.)

SNYDER v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. July 8, 1902.)

1. CONTRACT—PROVISION AGAINST ASSIGNMENT.

> A provision in a contract to do work for a city that there shall be no assignment of it does not prevent assignment of claim for work done under it, and for damages for breach by the city; there having been a breach by it, and the work having been completed by another.

2. SAME—PROVISIONS FOR PAYMENT.

> Under a contract for filling in dirt and grading a street, providing that a city surveyor will certify the quantity of work done, and that payments will be made during progress of the work by monthly installments of 70 per cent. on the work performed, should the commissioner of public works deem it advisable, and that, if such commissioner be of opinion that the work is unreasonably delayed, he may direct the contractor to discontinue work, he cannot, in the absence of any ground, withhold such payments, or declare the contract abandoned because of the contractor's refusal to proceed unless payments to which he is entitled are made.

3. SAME.

> The city comptroller cannot, except for collusion and fraud or mistake, refuse payment to a contractor on certificate of city engineer, approved by the commissioner of public works, which, according to the contract, was the condition of payment.

Appeal from judgment on report of referee.

Action by George Snyder against the city of New York. From a judgment for plaintiff on report of a referee, defendant appeals. Affirmed.

The action is brought to recover the sum of $22,939, claimed to be due in pursuance of a contract for filling and grading 9th avenue from 201st street to Kingsbridge road, made between the city and plaintiff's assignor, C. C. Dean, on August 29, 1894, which contract, it is averred, was terminated by the failure of the city to pay the entire amount called for in the ninth certificate, dated November 18, 1896, and its failure to give further certificates for work duly performed under the contract. The contract, after stating the prices per cubic yard which should be paid for excavations, filling, etc., provides as to payments: "A city surveyor will be employed by the parties of the first part [city of New York] to see that the work is completed in conformity to the profile, and to ascertain and certify the quantity of work done. * * * The return of the city surveyor shall be the account by which the amount of materials furnished and work done shall be computed, and he [contractor] shall not be entitled to demand or receive payment * * * until the same shall be fully completed, * * * and such completion certified by the surveyor, inspector, and superintendent of street improvements, and until each and every stipulation hereinbefore mentioned are complied with, and the work completed to the satisfaction of the commissioner of public works, and accepted by him, whereupon the parties of the first part [city] * * * will pay * * * in cash on expiration of 30 days from the time of the completion of the work and the acceptance of the same * * * the whole of the moneys accruing. * * * But in case the amount payable under this contract shall be $5,000 or over, payments will be made to the said party of the second part * * * by monthly installments of seventy per cent. on the amount of work performed, and also on the quantity of materials furnished and delivered, should the commissioner of public works deem it advisable so to do, in which case, however, the quantity returned shall be such that the amount paid will be fairly due, * * * provided the amount * * * shall not be less than $1,500." Thereafter the contract provides that the commissioner may reject any return, should it not be in accordance with the facts, and that "it is further expressly understood and agreed * * * that the action of the surveyor by which the said contractor is to be bound * * * shall be that evidenced by his final certificate,—all prior certificates upon which seventy per cent. payments may be made being merely estimates, and subject to corrections of such final certificate,—and that no department of the city shall be precluded or estopped by any return or certificate * * * from at any time showing the true and correct amount and character of the work which shall have been done, * * * nor from withholding payment of the several sums herein specified until the said party of the second part, when required, shall make and furnish sufficient and independent proof of the work done under this agreement." The contract further provides that the contractor should not assign "any of the moneys payable under the contract," unless by and with the consent of the commissioner, in writing. It appears from the testimony in the case as to the nature of the work called for by the contract, as well as the oral proof, that it was necessary, in order to get to hard bottom below the surface of the land, to go down to a line of soundings averaging six feet in depth; and it was necessary, also, to establish the grade called for, to go above the natural surface at least nine feet. It appears from the testimony that the land was soft and marshy meadow land, and near the river, in which the tide flowed, covering a portion of the surface, and the filling, when the car loads dumped it in, disappeared from sight, and that some of the soundings had been made from a boat. The work proceeded after the contract was made, in 1894, without any difficulty until the making of the ninth certificate, in November, 1896, by the city surveyor, that 30,000 cubic yards of filling had been furnished, which, at 38 cents, gave the sum of $11,400, and 70 per cent. thereof, $7,980, was therefore payable. This calculation, it appears from the testimony, was made from the soundings as actually made and as set forth in the profile map, and on this basis a considerable amount was allowed for settlement or shrinkage. This certificate shows that theretofore there had been 8,000 yards of excavation and 126,000 yards of filling; and from the certificate of 70 per cent. payment it appears that there had already been earned, be-

fore this payment was due, $38,400, of which $26,880 was paid under the 70 per cent. payments. Instead, however, of paying this certificate of the surveyor, an examiner in the comptroller's office questioned the amount of shrinkage or settlement, and the comptroller returned the certificate to the commissioner, who wrote that the estimate was based on borings actually made by the department, and that he was satisfied it was a just claim, and he sent it back accordingly for payment. The comptroller, however, was not satisfied, and interviews were held with the contractor; and as a result the comptroller submitted the matter to an engineer who had formerly been employed in the department, and paid him to investigate and report the matter. This engineer (Crouzbaur) reported March 23, 1897, that there was no such settlement as had been allowed by the surveyor and the department of public works, and deducted 11,144 cubic yards. Upon this report the comptroller deducted from the original certificate 11,500 yards, and paid over as a 70 per cent. payment, instead of $7,980, the sum of $4,921, on March 29, 1897. Meanwhile, and for six weeks after the giving of the ninth certificate, on November 18, 1896, the contractor continued his work of filling, so that nothing remained but curbing and flagging, and demanded a further certificate, which was refused on the ground that the ninth certificate had not been determined. Various demands were made by the contractor, both for payment of the ninth certificate as given in the first instance, and for a further certificate, which demands were not complied with, although the contractor gave notice that he would consider the contract broken by the city. Instead of complying with these letters, the city gave notice that, unless the contractor proceeded, the remainder of the work would be given to another contractor. Subsequently the work was performed by another contractor, and this suit was brought to recover the amount unpaid under the ninth certificate, and the whole cost of the work performed, for which the contractor had not been paid at contract prices.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

Terence Farley, for appellant.

L. Laflin Kellogg, for respondent.

HATCH, J. It is claimed by the appellant, as a first ground upon which to defeat a recovery in this action, that by the provisions of the contract there could be no assignment of the same without the previous written consent of the commissioner of public works, or his successor, indorsed thereon, and, as such consent was never given, no cause of action vested in the plaintiff as against the defendant. In Fortunato v. Patten, 147 N. Y. 277, 41 N. E. 572, it was held that such a provision of the contract was for the protection of the city, and to secure for it the skill and intelligence of the person with whom the city contracted. It was recognized in that case, however, that there was a wide distinction between the assignment of a contract and the assignment of moneys falling due thereunder after performance. For the purpose of disposition of this question, we assume that there was a breach of the contract upon the part of the city, and, if so, the contractor became entitled to have and receive the sums of money which had been earned thereunder, and to recover for such damages as might have been occasioned by the breach. An assignment, therefore, of these claims would not be an assignment of the contract, but of a cause of action against the city for the recovery of moneys which it was obligated to pay; and, in this view of the question, there would be no violation of that clause of the contract which prohibited its assignment without the consent of the commissioner of public works.

The clause in question is a restriction solely upon the assignment of the contract, as such, and not of the moneys earned thereunder, which the city is bound to pay. Mellen v. Insurance Co., 17 N. Y. 609; Brichta v. Insurance Co., 2 N. Y. Super. Ct. 403. Such an assignment is not an assignment of the contract. Brace v. City of Goversville, 167 N. Y. 452, 60 N. E. 779. If, therefore, the evidence authorized a finding that the city has been guilty of a breach of the contract, and that there was money due and payable according to its terms, the plaintiff in this action acquired title thereto, and was authorized to maintain this action for its recovery. It also appeared that the assignment was not made until the work had been completed by another contractor, so that at the time when this assignment was made there was no contract in existence to assign. Consequently the city could not be deprived of the services of the particular contractor in the performance of the contract, nor could it be vexed by being compelled to deal with other parties with whom it had entered into no contractual relation. There was nothing, therefore, in existence which could be assigned at the time when this assignment was made, except the claim which was held by the contractor against the city, predicated upon its breach of the contract.

By the terms of the contract, it is insisted, the commissioner of public works was justified in declaring the contract abandoned. Upon this subject the contract provides that the commissioner may at any time, if he shall be of opinion, and shall so certify in writing, that the work, or any part thereof, is unnecessarily or unreasonably delayed, or the contract is being willfully violated, or for other cause of bad faith on the part of the contractor, direct the contractor to discontinue all work, by written notice to that effect, and thereupon the contractor is required to discontinue. Under that clause of the contract relating to payments by which 30 per cent. is authorized to be retained, the payment of the 70 per cent. is to be based upon the determination of the commissioner of public works as he shall deem advisable. It is evident that this authority which is vested in the commissioner of public works, both as to performance of the contract and payment thereunder, is not to be exercised arbitrarily at the mere will of the commissioner. There must exist some basis therefor, and the commissioner must fairly exercise his judgment and discretion thereon; and in the absence of any ground the commissioner would not be justified in directing the contractor to cease performance of the contract, or withhold the payment of the 70 per cent. when the contractor was clearly entitled thereto by the terms of the contract. It is evident that if the contract had been performed by the contractor, so as to entitle him to the payment under the ninth certificate, then it became the duty of the commissioner of public works to authorize a payment; and if there was a breach upon the part of the city by refusing payment of the ninth certificate, and also in withholding the delivery of the tenth, then the commissioner of public works was not justified in declaring the contract abandoned. Such declaration was of a time considerably subsequent to the date when the contractor became entitled to these payments, and, if he should have received them at that time, the city could not, through the commissioner of

public works, by subsequent declaration, declare the contract canceled; nor could the contractor be placed in default by any such declaration, if he had been guilty of no breach himself. To permit the city so to do would authorize it to take advantage of its own wrong. Graf v. Cunningham, 109 N. Y. 369, 16 N. E. 551; Wright v. Reusens, 133 N. Y. 298, 31 N. E. 215.

The contract was comparatively large, took a considerable time for its completion, and necessarily involved a large expenditure of money in performing the work. It is necessarily to be presumed, therefore, that the 70 per cent. payment was necessary, from time to time as the work progressed, to enable the contractor to receive sufficient money therefrom to properly carry on the work. The payment of this sum, therefore, was evidently necessary, and essential to enable the contractor to properly perform the contract. It is evident that in these respects, as well as in all others, good faith and fair dealing were required at the hands of both contracting parties. The question, therefore, comes ultimately to rest upon the question as to whether the contractor became entitled to payment under the ninth certificate. By the terms of the contract, his right was to be evidenced by the certificate of the surveyor appointed by the city subject thereafter to the proper scrutiny of the commissioner of public works. In the absence of fraud or mistake, the certificate thus given was binding and conclusive upon both parties, and entitled the contractor to payment according to its terms. Sweet v. Morrison, 116 N. Y. 19, 22 N. E. 276, 15 Am. St. Rep. 376; Wyckoff v. Meyers, 44 N. Y. 143; Smith v. City of New York, 12 App. Div. 391, 42 N. Y. Supp. 522; New York Bldg. & Imp. Co. v. Springfield Elevator & Pump Co., 56 App. Div. 294, 67 N. Y. Supp. 887.

It is undisputed that the surveyor, acting for the city, gave to the contractor the certificate contemplated thereby, under and by virtue of which the contractor became entitled to have and receive, as a 70 per cent. payment, the sum of $7,980. To this certificate the commissioner of public works made no objection. On the contrary, after consultation with the comptroller the commissioner of public works examined the work, and recommended to the comptroller that the certificate be paid as certified, and returned the same to the comptroller for payment. So far as the terms of the written contract are concerned, there is nothing therein which authorized the comptroller either to suspend the work under the contract, or refuse payment when properly certified by the surveyor. While undoubtedly the comptroller, by the terms of the contract, was invested with authority to refuse payment when he had reason to believe that the same was improper and the result either of collusion and fraud or mistake, he could not arbitrarily refuse payment if the certificate was properly given for work performed. He had no power to work a forfeiture of this contract, and place the contractor in default under the terms of the contract. That authority was invested in the commissioner of public works, and he was bound to act fairly and reasonably in refusing payment. It is clear, therefore, that, so far as the contract is concerned, all of the persons who were charged

with the duty of its immediate execution and supervision upon the part of the city acquiesced in the payment of the ninth certificate; and prima facie, therefore, the city was in default in refusing to pay according to its terms. And so, also, the contractor, if he thereafter performed the contract, was entitled to the tenth certificate, and payment thereunder. These two certificates carry the contract to completion, so far as the filling and grading were concerned. It is therefore evident that the plaintiff showed himself entitled to recover, as he established a breach of the contract by undisputed proof, so far as the action of the city and its agents are concerned, who were charged with the duty of executing this contract. These acts prima facie constituted breaches of the contract on the part of the city. Jones v. Judd, 4 N. Y. 411; William Wharton, Jr., & Co. v. Winch, 140 N. Y. 287, 35 N. E. 589; Curnan v. Railroad Co., 138 N. Y. 480, 34 N. E. 201. And the refusal on the part of the city to pay the tenth certificate was not justified if the work had been performed. Bowery Nat. Bank v. Mayor, etc., of City of New York, 63 N. Y. 239.

The only ground, therefore, upon which the defendant could resist payment, was by showing either actual fraud or collusion or mistake. No fraud or collusion was shown,—at least, the evidence would scarcely have justified such finding. The defense came, therefore, to rest upon the ground that the certificate was mistakenly given under a misapprehension as to the extent of the work which had been performed. Upon this subject an immense volume of testimony was given upon both sides, running the whole gamut of the character of the soil upon which a part of the filling was placed, measurements of engineers based upon actual borings, amount of material actually transported upon the cars and used in the construction of the grade, expert testimony, soundings, and practical expert observation from every point of view of which the case admitted. It is not difficult, therefore, to see that there was a wide divergence in the testimony which was given by the various witnesses, and conclusions diametrically opposed were drawn by experts and engineers from substantially the same conditions. It would serve no useful purpose to encumber this opinion with an exhaustive review of the testimony given upon the trial. We have carefully read the whole of the record, and have no difficulty in finding the existence of evidence sufficient to support the findings and conclusions of the learned referee. Nor are we prepared to say that we should disagree with his conclusion. On the contrary, there is evidence which furnishes substantial support for the judgment which he has rendered, and while in many respects testimony has been given which, if credited by the referee, would have authorized a different conclusion, yet there is no such preponderance of such testimony as calls for interference with the judgment by this court.

It follows, therefore, that the judgment should be affirmed, with costs. All concur.