Irving Sacks, etc., Respondent, *v.* Neptune Meter Company, Appellant.

Supreme Court, Appellate Term, First Department, June 23, 1932.

*Saul Adelman,* for the appellant.

*Samuel G. Litwin,* for the respondent.

Untermyer, J.   The defendant, the employer of one Raybeck, the plaintiff's assignor, appeals from a judgment requiring payment to the plaintiff of wages earned by the employee.   The wages were assigned to the plaintiff in violation of the following stipulation of the contract under which Raybeck was employed:

" Neptune Meter Company.

" It is hereby expressly agreed by and between the employee and the employer that during the period of employment the employee will make no assignment of any kind or nature of the wages earned by him either by power of attorney, conditional sales contract or any other agreement designed to compel the employer to pay such wages to any other person other than the employee.

" WM. RAYBECK."

In rendering judgment in favor of the plaintiff the court below apparently proceeded on the theory (which is the theory on which the judgment is defended on this appeal) that the action could be maintained against the employer because the provision of the contract of employment against the assignment of wages by the employee was against public policy and nugatory. In that opinion I do not concur, although, for other reasons, I concur in the conclusion of the trial court. I think it is necessary, therefore, that the reasons for our decision be stated in order that our affirmance of the judgment may not be misconstrued.

If the agreement between the defendant and its employee had provided that the claim for salary was non-assignable or that no rights against the defendant were acquired by an assignee, then I am of the opinion that the plaintiff would not be entitled to recover here. The employer's interest in preventing the assignment of wages by an employee may be readily understood, if an explanation may be deemed at all necessary in view of the express contract between the parties here. An employer may consider that his employee will render less satisfactory service if he has divested himself of all beneficial interest in the compensation for his work. He may desire also to avoid the assertion of conflicting claims by the employee and by an assignee, as well as the expense, the inconvenience and the uncertainty of interpleading the respective claimants to the fund. This consideration assumes special importance when the employer is dealing with many employees. Analogous considerations may influence parties to prohibit the assignment of rights under contracts of a different character. (See *Brice* v. *Bannister*, 3 Q. B. D. 569 [L. R. 1877–1878].) I think an employer or any other contracting party should not be denied the right to protect an interest so manifest, by means so reasonable, unless some settled principle of public policy or some statute inexorably requires it.

I find no principle of law nor do I find any statute which constrains us to a conclusion which defies the contract and intention of the parties and which, I think, unnecessarily circumscribes the right of the employer to protect himself. My investigation has disclosed no decision in this State or elsewhere which, in the absence of statute, has ever held that a contractual prohibition against the assignment of a claim is unenforcible. The question was not decided in *State Bank* v. *Central Mercantile Bank* (248 N. Y. 428), for it was held that the terms of the contract (a certificate of deposit) were not sufficient to prohibit an assignment, and it was found, accordingly, to be unnecessary to " choose between these alternatives " of the right freely to contract and the right freely to

alienate rights of property. Nor was the question decided in *Portuguese-American Bank* v. *Welles* (242 U. S. 7), because the debtor, the only person in a position to object, did not complain of the assignment. The question was, however, directly decided by this court in *Reisler* v. *Cohen* (67 Misc. 67), where, in a very similar case, it was held that an assignee could not maintain an action for the proceeds of a contract where assignment was prohibited by the contract creating the right.

Although I am aware of no other decision in this State which has directly decided this question, recurring statements to the same effect in opinions of the Court of Appeals, though perhaps *dicta*, are not without significance. In *Devlin* v. *Mayor* (63 N. Y. 8) Judge ALLEN said: "Parties may, in terms, prohibit the assignment of any contract and declare that neither personal representatives nor assignees shall succeed to any rights in virtue of it, or be bound by its obligations." In *Fortunato* v. *Patten* (147 N. Y. 277) the court, speaking of a covenant against assignment, said: "'The terms and conditions of a contract have the force of law over those who are parties to it.' (*Lowry* v. *Inman*, 46 N. Y. 129.) As between Dawson and the city the covenant we are considering does have the force of law, for the reason they are parties to the contract and come within the express terms of the maxim quoted." And finally, in *Rosenthal P. Co.* v. *Nat. Folding B. & P. Co.* (226 N. Y. 313) it was said: "The general rule now prevailing (as the successor of the archaic view that a contract created strictly personal obligations between the parties and non-assignability was a logical attribute) that any property right, not strictly personal, is assignable, is overcome only by agreement of the contracting parties or a principle of law or public policy." See, also, *Higgins* v. *McConnell*, 130 N. Y. 482.

The rule elsewhere is the same. Though sometimes challenged as against public policy, such provisions have been uniformly sustained. (*Burck* v. *Taylor*, 152 U. S. 634; *Lockerby* v. *Amon*, 64 Wash. 24; *Mueller* v. *Northwestern University*, 195 Ill. 236; *State ex rel. Kansas City Loan Guarantee Co.* v. *Kent*, 98 Mo. App. 281; *Tabler, Crudup & Co.* v. *Sheffield Land, Iron & Coal Co.*, 79 Ala. 377; *Joint School District* v. *Marathon County Bank*, 187 Wis. 416; *City of Omaha* v. *Standard Oil Co.*, 55 Neb. 337; *Sperry & Hutchinson Co.* v. *Weber & Co.*, 161 Fed. 219.) Leading commentators on the law of contracts have expressed the same conclusion. Williston in a very comprehensive discussion of the subject (Williston on Contracts, § 422) says: "It can hardly be admitted, however, that public policy forbids a contract to pay money to the promisee and to the promisee only without the intervention of an

agent, or a contract to pay money, only if the beneficial interest in the claim still is in the promisee." Corbin in " Breach of Prohibition of Assignment " (37 Harv. Law Rev. 757 [1924]) concludes: " It is, however, difficult to understand why the creditor is not bound by the provisions of the agreement by which he derived the claim." The American Law Institute, also, in its " Restatement of the Law of Contracts " has formulated the rule as follows (§ 151): " A right may be the subject of effective assignment unless * * * (c) the assignment is prohibited by the contract creating the right."

Indeed, I think it is evident that the only possible argument to the contrary is that section 41 of the Personal Property Law was designed to invalidate any restriction upon assignability which the parties to a contract may have expressly agreed upon. This section provides that

" 1. Any claim or demand can be transferred, except in one of the following cases:

" (1) Where it is to recover damages for a personal injury, or for a breach of promise to marry.

" (2) Where it is founded upon a grant, which is made void by a statute of the state; or upon a claim to or interest in real property, a grant of which, by the transferrer, would be void by such a statute.

" (3) Where a transfer thereof is expressly forbidden by a statute of the state, or of the United States, or would contravene public policy.

" 2. A judgment for a sum of money * * * may be transferred * * *.

" 3. Where a claim or demand can be transferred, the transfer thereof passed an interest, which the transferee may enforce by an action or special proceeding, or interpose as a defense or counterclaim, in his own name, as the transferrer might have done; subject to any defense or counterclaim, existing against the transferrer, before notice of the transfer, or against the transferee. * * *."

It is significant that section 41 contains no provision specifically declaring that parties may not contract to prohibit the assignment of a claim, such as we would expect to find if it had been intended to discard a concept which by long-continued and universal recognition had become incorporated in the very structure of the law. Indeed, I am unable to find here even an implication that the Legislature intended such a result.

To say that a party " can " transfer a claim (Pers. Prop. Law, § 41) is not to say that he cannot contract otherwise. This will seem especially true if we remind ourselves of the purpose and history of this legislation. Section 41 of the Personal Property

Law is directly associated in origin with section 210 of the Civil Practice Act, which requires all actions to be brought in the name of the real party in interest. (Code Proc. of 1848, §§ 91, 92; Code Proc. of 1868, §§ 111, 112. See Notes to Voorhies' New York Code of Procedure [1868, 9th ed.], pp. 1010, 1011; Code Civ. Proc. of 1882, §§ 1909, 1910; also notes to §§ 1909 and 1910 of Throop's Code Civ. Proc. [ed. 1882].) The successive changes through which section 41 of the Personal Property Law has passed will show how closely it is related with the legislation which requires an assignee to sue in his own name. Although in the course of years they have become so far separated that we sometimes may forget their common ancestry, both were part of the same reform, gradually extending the right of assignment and vesting in the assignee full legal title to the claim. (See paragraph 1 of section 111 of the Code of Procedure of 1868.) The purpose of section 41 (derived from sections 1909, 1910 and 1912 of the Code of Civil Procedure of 1882) as disclosed by its history was to remove a disability — not to impose a restriction. In the absence of any express restriction in the statute, we should not unnecessarily hold that parties by their contracts may not curtail their rights. The ancient maxim *modus et conventio vincunt legem* is applicable here.

Although subdivision 1 of section 41 provides that " any claim or demand can be transferred," subdivision 3 expressly subjects all such transfers to " any defense " existing against the transferrer or the transferee. When these provisions are read together it becomes manifest that subdivision 1 of section 41 regulates the assignability of claims as between the parties to the transfer and that subdivision 3 alone has relation to the rights thereby acquired by the assignee against the debtor or obligor. Even as between the parties to the transfer, the assignment is inoperative if it falls within any of the exceptions enumerated in subdivision 1, but all assignments, though otherwise effective between the assignor and assignee, are subject to " any defense " existing in favor of the party against whom the claim exists. What such a " defense " may be the statute does not say. Since it does not say, it follows that the same facts constitute a defense after the enactment of the statute that would have constituted a defense before. Nor is it strange that subdivision 1 of section 41 contains exceptions invalidating assignments in certain classes of cases without mention of assignments which are prohibited by agreement of the parties. The exceptions enumerated in subdivision 1 are those of assignments which are void even as between the parties to the transfer without regard to the rights of the obligor. But such invalidity as concerns us here consists in an objection which does not defeat the assignment as between the assignor and assignee. It is an objection

or defense available only to the obligor (*Portuguese-American Bank* v. *Welles*, 242 U. S. 7; *Fortunato* v. *Patten*, 147 N. Y. 277; *Spencer* v. *Myers*, 150 id. 269) and is expressly saved to him by subdivision 3 of section 41.

A further consideration confirms this view. Among the claims which are made non-assignable by subdivision 1 of section 41 are those where assignment " would contravene public policy." This provision continues the rule of the common law which has always refused to enforce, even as between the assignor and assignee, the assignment of salary by public employees upon the ground that such assignments are detrimental to the public service. (*Bliss* v. *Lawrence*, 58 N. Y. 442; *Bowery National Bank* v. *Wilson*, 122 id. 478; *Matter of Worthington*, 141 id. 9.) By the third exception of subdivision 1 of section 41 the Legislature has recognized and perpetuated that rule. It would impress me as incongruous to hold that the Legislature, on grounds of public policy, had invalidated private contracts intended to prohibit precisely that which, in the case of public employees, also for reasons of public policy, it has expressly prohibited by law.

Our conclusion that section 41 of the Personal Property Law was not intended to invalidate contracts prohibiting the assignment of claims is in accord with decisions in at least two other jurisdictions where similar statutes have been construed. (*La Rue* v. *Groezinger*, 84 Cal. 281; *Barringer* v. *Bes Line Construction Co.*, 23 Okla. 131.) To the contrary, it is true, is *Bewick Lumber Co.* v. *Hall* (94 Ga. 539). We think that both upon principle and upon authority in this State and elsewhere a covenant against assignment, which in substance provides that the obligation shall be unenforcible in the hands of an assignee, is available to the obligor as a defense until the Legislature in less uncertain terms shall have declared otherwise.

In so holding we do not sanction unlimited restraint upon the alienation of property within the accurate definition of that term. There is a perceptible distinction between the right of a contracting party to impose conditions upon the exercise of a contractual right and the imposition on the owner in fee of undue restraint in respect to the alienation of his property. A grantor cannot transfer complete ownership of tangible property and still control its devolution, because such control is repugnant to the absolute character of the grant, depriving the property of one of its essential attributes. It was so held in the leading case of *DePeyster* v. *Michael* (6 N. Y. 467), where the earlier authorities are carefully compiled. The reason given is that " the ownership of the fee cannot exist in one person while the ownership of the right of alienation and of its fruits, exists in a different person " (p. 493). (See, also, *Oxley* v. *Lane*,

35 N. Y. 340; *Hood* v. *Oglander*, 34 Beav. 513.) This rule applies also to personal property. (*Van Horne* v. *Campbell*, 100 N. Y. 287; *Jackson* v. *Robins*, 16 Johns. 537; *Matter of Yalden*, 1 DeGex, M. & G. 53; *Matter of Mortlock's Trust*, 3 Kay & J. 456.) In all such cases, whether relating to real or personal property, the transfer having been executed, no further action by the grantor was required to vest ownership in the grantee. But that rule does not apply where the restraint is upon the alienation of an estate for years and the grantor has reserved a reversionary interest in the property. (*DePeyster* v. *Michael, supra,* 491.) Even more conspicuously would the rule seem to be inapplicable where no transfer of title has occurred and the restraint is only of contractual rights.

I have been unable to discover that the rule against restraints on alienation has ever been applied to choses in action. Where the subject-matter of the transfer is tangible property, logical consistency and public policy alike require that the right of alienation be not separated from ownership which is otherwise complete. (Gray Restraints on Alienation [2d ed.], § 257; *Overman's Appeal,* 88 Penn. St. 276.) In such cases there exists no unexecuted obligation by the grantor to convey to which such a limitation can attach — no estate remains in the grantor which justifies protection by a restraint against assignment. But where the subject-matter is a chose in action neither public policy nor consistency requires that it be enforcible against the promisor except in accordance with the terms on which his promise was made. The limitation is not so much imposed on the obligee's right of alienation as on the obligor's duty to perform. The restraint then becomes a condition of acquisition. (*Matter of Hohman,* 37 Hun, 250, 258; *Large's Case,* 2 Leon. 82; 3 id. 182; Gray Restraints on Alienation [2d ed.], § 46.)

So here, every right under the contract of employment, though fully performed by the obligee, remained executory and contractual, and still required, for complete enjoyment, performance by the obligor. That performance the obligor might have circumscribed by whatever conditions it saw fit. In doing this, it would not have curtailed alienation of the fund after it was paid to its employee. It would have prescribed only the conditions on which it would pay. Speaking of this subject, Corbin, in an article on " Breach of Prohibition of Assignment " (37 Harv. Law Rev. 757 [1924]), says: " Though the consequences of specific enforcement be pushed to the last extreme, the transaction still is contractual in its essence and the personal element remains important. The vendor may impose many conditions in such a contract which he could not in

the conveyance of a present legal fee; a provision against assignment of the contract rights could scarcely be called 'repugnant' in its encumbering aspect."

If, then, the prohibition against assignment of the salary in the contract here were in terms such as to render the salary non-assignable, it would constitute a defense which might be asserted by the defendant against the plaintiff under subdivision 3 of section 41 of the Personal Property Law. The instant the assignment was made there would have come into existence a defense to the enforcement of the claim in the hands of the assignee. The assignee's only recourse would then have been against his assignor, since as between the parties to the transfer the assignment would not be invalidated by section 41. "One who accepts an assignment of a contract, which by express terms is made non-assignable, acquires only a cause of action against the assignor." (*Bonds-Foster Lumber Co.* v. *Northern Pac. Ry. Co.*, 53 Wash. 302.)

But the agreement here between the defendant and its employee is not of such a character and for that reason I am of opinion that the judgment should be affirmed. The agreement does not provide that the wages are not assignable. It does not provide that an assignment of the wages, if attempted, shall vest no interest in the assignee. On the contrary, it consists merely of a stipulation that "the employee will make no assignment of any kind or nature of the wages." This was a personal promise of the employee which concerned the wages it is true, but which did not alter the quality or essential character of the right which was assigned. Upon breach of that collateral promise the employer was limited to a recovery against the employee of such damage as he might thereby have sustained. It is one thing to agree that a chose in action shall not be assignable and that if assigned no right of action shall vest in the assignee. It is another and a different thing if the owner of the chose in action merely covenants with the obligor that he will not assign. I interpret the cases of *Manchester* v. *Kendall* (51 N. Y. Super. Ct. 460); *Reliable Loan & Investment Co.* v. *Delgus Co., Inc.* (223 App. Div. 94) and *State Street Furniture Co.* v. *Armour & Co.*, 345 Ill. 160) to have so decided and to have decided nothing more. In *Manchester* v. *Kendall* (*supra*) it was provided that "this contract not to be assigned or any part thereof or any installments to grow due under the same." It was held that this provision did not deprive the contract of assignability but, upon breach, only justified a claim for damages. In so holding the court said: "These words do not, on their face, attempt to prevent there coming into existence those things and rights, which when they exist, show there is something to which the law attributes

the quality of assignability. There would be performance and a corresponding obligation to pay, in which Haas or his assignee would have a right of property. The words must be construed to mean, if they can be enforced, that Haas agrees not to assign, etc., and if he do, the appropriate consequence would be a claim for damages for a breach of the agreement. They would not make the assignment void." This decision was affirmed by the Court of Appeals (103 N. Y. 638). The same rule was followed and applied in *Reliable Loan & Investment Co.* v. *Delgus Co., Inc.* (*supra*), where the court observed that failure to comply with the contract by giving notice in writing of assignment as required by the contract " does not make the assignment void but only makes the assignor liable for damages, if any." So, also, in *State Street Furniture Co.* v. *Armour & Co.* (*supra*) it was said that " a violation of an employee's agreement with his employer may provide ground for the employee's discharge or other action by the employer but cannot control the disposition of moneys earned under the contract of employment." It is important to observe that each of these decisions concedes the liability of the assignor for any damages caused by the breach of the covenant against assignment. If it had been intended to hold that a covenant against assignment was against public policy and unenforcible, it is not possible that such a liability for damages resulting from its breach would have been expressly recognized. Since, however, the contract here does not affect the assignability of the wages, the plaintiff acquired rights therein which are not invalidated by the breach of the collateral stipulation between the defendant and its employee. For the breach of that stipulation the defendant is limited to a cause of action for damages against its employee. Accordingly, the judgment should be affirmed.

Judgment affirmed, with twenty-five dollars costs.

Lydon, J., concurs.

Frankenthaler, J. (concurring). The question here presented is whether a provision of an employment contract between the plaintiff's assignor and the defendant that the former would make no assignment of the wages earned by him prevents a recovery by the plaintiff on an assignment of such wages by the employee.

There is an important difference between an assignment of a contract itself and an assignment of a claim for moneys due under the contract. (*Fortunato* v. *Patten*, 147 N. Y. 277, 282; *Snyder* v. *City of New York*, 74 App. Div. 421, 426.) It is only the latter with which we are concerned here. With but one possible exception (*Reisler* v. *Cohen*, 67 Misc. 67) our courts have held that a provision against the assignment of a claim for money does not make an assignment of such claim void, but merely gives the obligor a right

of action against the obligee-assignor for damages which the former may have incurred by reason of the breach of that provision.

In *Manchester* v. *Kendall* (19 J. & S. [51 N. Y. Super. Ct.] 460), which was affirmed by the Court of Appeals (103 N. Y. 638), a contract contained the provision that neither it nor any of the installments to grow due under it were to be assigned. An installment not yet due was assigned to the plaintiff who brought the action after the installment became due. To the defendant's objection that the contract prohibited such an assignment, the court answered (p. 463): " These words [prohibiting assignment] do not, on their face, attempt to prevent there coming into existence those things and rights, which when they exist, show there is something to which the law attributes the quality of assignability. There would be performance and a corresponding obligation to pay, in which Haas [the obligee] or his assignee would have a right of property. The words must be construed to mean, if they can be enforced, that Haas agrees not to assign, etc., and if he do, the appropriate consequence would be a claim for damages for a breach of the agreement. They would not make the assignment void."

In *Snyder* v. *City of New York* (*supra*) the agreement provided that neither the contract nor " any of the moneys payable under this contract " should be assigned unless by and with the written consent of the commissioner of public works. The Appellate Division, First Department, held that this was a " restriction solely upon the assignment of the contract as such and not of the moneys earned thereunder which the city is bound to pay."

In *Bank of United States* v. *Public Bank* (88 Misc. 568; affd., 168 App. Div. 915) it was held that defendant's rule requiring pass books to be presented by the depositor in person in order to be honored for drafts was ineffective against an assignee of the account. This court said that it would not construe the bank's rule so as to permit a debtor to make his debt unassignable.

In *Reliable Loan & Investment Co.* v. *Delgus Co., Inc.* (223 App. Div. 94), our Appellate Division reaffirmed the rule laid down in *Manchester* v. *Kendall* (*supra*). That contract provided that it " and the payments to be made thereunder " might be assigned, upon condition that notice was given by registered mail. It was stated that " The covenant requiring notice in writing does not make the assignment void, but only makes the assignor liable for damages, if any."

The same conclusion has recently been reached by the Illinois courts in *State Street Furniture Co.* v. *Armour & Co.* (345 Ill. 160), which deals with an agreement not to assign wages without the

written consent of the employer. In effect, that agreement was like that which we are considering here, for it cannot be doubted that this defendant might, had it so desired, have waived the prohibition against assignment. The Illinois court held that the right to wages was a money claim and freely assignable under its statute (Ill. Prac. Act, chap. 110, § 18), which is not materially different from ours (Pers. Prop. Law, § 41); that the contract not to assign was not binding against the assignee who was not a party thereto, even though he had notice; and although the breach of the agreement might furnish a ground of action by employer against employee, that the former could not control the disposition of the moneys earned.

The suggestion in *Manchester* v. *Kendall* (*supra*) that the obligation to pay money due under a contract is something in which the obligee or his assignee has a right of property, the transfer of which cannot be prohibited by the debtor, has met with the favor of the United States Supreme Court in an opinion by Mr. Justice HOLMES (*Portugese-American Bank* v. *Welles*, 242 U. S. 7, 11) in which it is said that " Of course a covenantor is not to be held beyond his undertaking and he may make that as narrow as he likes. *Arkansas Valley Smelting Co.* v. *Belden Mining Co.*, 127 U. S. 379. But when he has incurred a debt, which is property in the hands of the creditor, it is a different thing to say that as between the creditor and a third person the debtor can restrain his alienation of that, although he could not forbid the sale or pledge of other chattels. When a man sells a horse, what he does, from the point of view of the law, is to transfer a right, and a right being regarded by the law as a thing, even though a *res incorporalis*, it is not illogical to apply the same rule to a debt that would be applied to a horse."

The opinion in *Reisler* v. *Cohen* (*supra*), which is the only New York case seemingly contrary to the general rule as I have stated it, merely sets forth a conclusion without offering any reasons or any authority therefor. It has never been followed nor even cited in any reported opinion in this State and is diametrically opposed to the decision in *Snyder* v. *City of New York* (*supra*). Furthermore, it seems that in *Reisler* v. *Cohen* (*supra*) the contract itself was assigned and that plaintiff's claim to the payments due thereunder was based on the assignment of the contract.

The rule that a contractual prohibition of the assignment of a money claim does not void such an assignment is reinforced by the provision of section 41 of our Personal Property Law that " any claim or demand can be transferred," except in certain specified cases, none of which includes a situation where the con-

tract giving rise to the claim prohibits its transfer. That this section is not to be construed as merely permissive in effect has been indicated by the Court of Appeals in the dictum by the present chief judge in *State Bank* v. *Central Mercantile Bank* (248 N. Y. 428, 435), that " it might well be held that by the Personal Property Law of New York (§ 41) the claim could be transferred even though the transfer was prohibited."

In *Bewick Lumber Co.* v. *Hall* (94 Ga. 539) it was held that a Code provision that " all choses in action arising upon contract are assignable so as to vest the title in the assignee " (Code of 1882, § 2244; Code of 1914, § 3653) made ineffectual as against an assignee a provision of a credit check that it was " not transferable."

Inasmuch as section 41 of the Personal Property Law specifically sets forth the exceptions to freely assignable claims it inferentially eliminates all other possible exceptions. The argument that an exception additional to those enumerated is to be implied where the transfer of a claim is prohibited by contract completely overlooks the fact that there would be even greater reason for implying such an exception in cases where a Federal or State statute prohibits the assignment and yet the Legislature deemed it necessary to specifically insert an exception in those instances and not rely upon implication. To say that it is incongruous to hold that the Legislature has invalidated private contracts prohibiting that which, in the case of public employees, it has expressly prohibited by law, is to overlook the fact that our courts have held such private agreements invalid as against an assignee of a money claim and that the Legislature has merely strengthened the rule by giving its sanction to it. Even in the absence of section 41, the prohibition against assignment is ineffective against this plaintiff under the rule laid down by the authorities in this State.

The argument that subdivision 3 of section 41 authorizes the defendant to assert the existence of the contractual prohibition as a defense against the assignee is based on the assumption that the prohibition is valid as against him, thus begging the very question which is presented for decision. Subdivision 3 gives no evidence of having been intended to do more than preserve the well-established rule that an assignee takes subject to all defenses. The prohibitory clause obviously could not be a defense existing against the transferrer, for the breach occurs only when the claim is assigned to a transferee. It cannot be a defense against the transferee unless created by the very act of assignment itself. As I interpret the authorities and subdivision 1 of section 41, the assignment does not create a defense against the transferee.

The Georgia Code (*supra*) provides that the assignee takes subject " to the equities existing between the assignor and debtor at the time of the assignment, and until notice of the assignment is given to the person liable," yet the decision in the *Bewick Lumber Co. Case* (*supra*) held the prohibition ineffective. The Illinois Code (Prac. Act, chap. 110, § 18) provides that in a suit by an assignee, " there shall be allowed all just set-offs, discounts and defenses, not only against the plaintiff, but also against the assignor or assignors, before notice of such assignment shall be given to the defendant." The courts of that State have held that this does not make the prohibition valid as a defense against the assignee. (*State Street Furniture Co.* v. *Armour & Co., supra.*)

The contention that, by reason of the provisions of subdivision 3 of section 41 of the Personal Property Law, the assignee's only recourse is against his assignor, while it may represent the law in some States, is refuted by the authorities in this State which have held that it is the debtor whose only recourse is against the assignor. (*Manchester* v. *Kendall, supra; Reliable Loan & Investment Co.* v. *Delgus Co., Inc., supra.*)

The majority opinion takes the view that the conclusion which I have reached is correct only because of the wording of the agreement involved in this case. I can observe no real difference between a stipulation that the employee will not assign his wages and an agreement that the wages are not assignable. Both, in effect, prohibit an assignment of the wages. To make a distinction is to disregard the decisions in *Bank of United States* v. *Public Bank* (*supra*), where the provision against assignment was obviously not a mere personal covenant, and in *Portuguese-American Bank* v. *Welles* (*supra*), where Mr. Justice Holmes clearly indicated that a debt is a property right, the alienation of which cannot be restrained. In *Bewick Lumber Co.* v. *Hall* (*supra*) the language of the prohibition made it obvious that there was no merely personal covenant against assignment, and the court reached the same conclusion as to the effectiveness of the prohibition.

That the prohibitory phrases in *Manchester* v. *Kendall* (*supra*); *Snyder* v. *City of New York* (*supra*); *Reliable Loan & Investment Co.* v. *Delgus Co.* (*supra*), and *State Street Furniture Co.* v. *Armour & Co.* (*supra*) can be classed as personal promises does not mean that such a distinction as the majority opinion has created actually exists. I have found nothing in those opinions to indicate that they considered the possibility of such a distinction, and I am of the opinion that none in fact exists.

The judgment should be affirmed.