ANN R. BANDES, Plaintiff, *v.* TRIBOROUGH BRIDGE AUTHORITY, HAROLD H. TOMPKINS, OFFENBERG BRICK CORP., ZUCKER WATER & SEWER SERVICE CORP. and MAX HOCHMAN, Defendants.*

City Court of New York, Trial Term, New York County, December 28, 1936.

* Judgment modified, 166 Misc. 731.

*Abraham J. Halprin,* for the plaintiff.

*Paul Windels, Corporation Counsel,* for the defendant Triborough Bridge Authority.

*Morris B. Matzkin,* for the defendant Zucker Water & Sewer Service Corp.

*Samuel Jacobs,* for the defendant Harold H. Tompkins.

*Louis Rosenberg,* for the defendant Offenberg Brick Corp.

RYAN, J. Plaintiff sues as an assignee of moneys due under a public improvement contract, and trial was had before the court without a jury. The contract in question was known as No. 44, and was entered into by Triborough Bridge Authority on the one part and Max Hochman as the contractor on the other part, on April 8, 1935, for the demolition of additional buildings to the Manhattan approach of the Triborough Bridge. Remaining unpaid on the contract is a balance of $3,760, now in the possession of the comptroller of the city of New York. The assignment in question provided, among other things, that the contractor assigned to the plaintiff the sum of $2,000 out of payments now due or hereafter to become due to him from the Triborough Bridge Authority under and by virtue of said contract, and is dated October 25, 1935, and was filed in the comptroller's office on November 4, 1935.

The defendant Zucker Water & Sewer Service Corp. in its answer interposes counterclaims, and demands judgment against the Triborough Bridge Authority in the sum of $1,169.14 by virtue of an instrument dated November 12, 1935, and filed in the comptroller's office on November 21, 1935, addressed to the Triborough Bridge Authority and the finance department, New York city, requesting and requiring that out of the moneys due and to grow due under said contract that " you pay unto Zucker Water & Sewer Service Corporation " the sum of $1,169.14, and charge such payment against the moneys due or to grow due and owing to the contractor under said contract. Hochman, the contractor, testified he received from the plaintiff the sum of $2,000 on the execution of said assignment and used same in the work, labor and material for the completion of said contract; he further testified that the last day he worked on the job was October 26, 1935.

A concession was made by the corporation counsel, representing the Triborough Bridge Authority, that the testimony of Hochman as to the time of the completion of the job given with respect to plaintiff's claim would be the same in reference to the claim of Zucker.

Joseph Zucker, secretary of the Zucker Corporation, testified concerning a verbal agreement had with the contractor to do certain work consisting of disconnecting water and sewer lines from the buildings to be demolished, which work was done between April 29 and September 19, 1935. Thus defendant asserts the claim for $1,169.14 on the ground that it performed the work for the contractor and received an order for the payment of that much of the contract moneys.

Item 22 of the contract in question, entitled " Assignments and Sub-Contracts," provides: " Inasmuch as this Contract is made in reliance upon the Contractor's personal qualifications and responsibility, and inasmuch as the payments to be made hereunder are intended to finance in part the Contractor's performance, the Contractor shall not assign or otherwise transfer this contract or any part hereof, or any moneys due or to become due hereunder, without first obtaining the consent of the Resident Project Engineer and then without the express consent in writing of the Authority; provided, however, that the Contractor may sub-contract work to be performed hereunder to such persons as the Chief Engineer, subject to the approval of the Resident Project Engineer, may from time to time approve in writing.

" No consent to any assignment or other transfer, and no approval of any sub-contractor shall under any circumstances operate to relieve the Contractor of any of his obligations under this contract; no Contract and no approval of any sub-contractor shall create or be deemed to create any rights in favor of such sub-contractor and against the Authority; and for all purposes hereunder, all assignees, sub-contractors, and other transferees shall be deemed to be the agents of the Contractor. Moreover, all sub-contracts and all approvals of sub-contractors, regardless of their form, shall be deemed to be conditioned upon performance by the sub-contractor in accordance with this contract; and if any sub-contractor shall fail to perform his Work to the satisfaction of the Engineer, the Chief Engineer shall have the absolute right to rescind his approval forthwith and to require the performance of such work by the Contractor personally, and/or through other approved sub-contractors.

" Nothing herein contained shall be construed to hinder, prevent or affect an assignment of any moneys due or to become due hereunder, made for the benefit of the Contractor's creditors pursuant to law."

Item 12 of the contract in question, entitled " Time for Completion," provides:

" The Contractor shall begin work within five (5) days after mailing of notice by the Chief Engineer so to do or if notice is delivered by messenger, within five (5) days after said delivery and shall complete all Work within 120 CONSECUTIVE CALENDAR DAYS from the date of said notice.

" The Chief Engineer shall be the sole judge as to whether the Work hereunder has been completed within the time stipulated."

Exhibit 5, introduced in evidence by the plaintiff, is a communication addressed to Col. Paul Loeser, director, and signed by Edward W. Stearns, acting chief engineer for the Triborough Bridge Authority, is dated January 3, 1936, and provides, among other things, as follows: " The contract (No. 44) provides that the work should be completed within 120 consecutive calendar days from the date of notice to the Contractor to begin work. Such notice was given on April 19, 1935. The date for completion was, therefore, August 17, 1935. The contract was actually completed on November 15, 1935. * * * On July 30, 1935, the Contractor requested an extension of time to September 1, 1935, claiming that his delay was caused by the failure of the Authority to have all the parcels available for demolition. * * * In my opinion the Contractor suffered a delay of approximately three weeks because of the non-availability of the parcels mentioned at the beginning of the work and the Contractor is, therefore, entitled to an extension of time to about September 7, 1935. The Work was practically completed prior to that date, the exceptions consisting of certain demolition below ground level, repairs to sidewalks and miscellaneous cleaning up which was finally completed November 15, 1935."

In introducing that exhibit (5) the plaintiff became bound by its terms. (*Jonasson* v. *Weir*, 130 App. Div. 528; *Curry* v. *American Railway Express Co.*, 214 id. 744.)

The date of the completion of the work is thus fixed as of November 15, 1935.

Plaintiff argues that it is wholly immaterial to her right of recovery whether the work under said contract was completed by the contractor on October 25, 1935, or on November 15, 1935.

The contract under consideration specifically prohibited the assignment or other transfer of the contract or any part thereof or any moneys due or to become due thereunder without the consent of the engineer and of the authority. That such consent was refused was not denied. That the contractor fully performed the contract is not denied; nor is the fact that the sum of $3,760 is still due as the balance thereon, which amount is in the possession of the comptroller.

In the case of *Episcopo* v. *Mayor of New York* (35 Misc. 623) the assignment involved that of the contract itself, the previous consent to assign which had not been obtained. "The fact of this omission," said the court, "if properly pleaded, would undoubtedly serve as a defense to the city to any claim made against it by an assignee of the contract."

Another case involving a similar principle is that of *Snyder* v. *City of New York* (74 App. Div. 421). There the defendant claimed that by the provisions of the contract there could be no assignment of same without the previous written consent of the commissioner of public works. Nevertheless, the court stated that the clause in question is a restriction solely upon the assignment of the contract, as such, and not of the moneys earned thereunder, which the city is bound to pay. (Citing cases.)

In the present case, however, the Triborough claims and the evidence shows that the contract was not wholly completed at the time of the assignment of the moneys to the plaintiff and the order to pay to Zucker executed by the contractor. From the dicta gathered in an examination of the authorities it is my opinion that the determination of this controversy is not dependent on the time when the assignment was made.

Adverting to the case of *Fortunato* v. *Patten* (147 N. Y. 277), we find a similar clause in the contract with the city; that the contractor shall not assign the contract nor any of the moneys payable thereunder without the consent of the city in writing, indorsed on the agreement; and that in the absence of such consent, no right to any moneys to grow due by the terms of the contract shall be asserted against the city. Referring thereto, the court said: "We do not think that this provision is capable of any such construction [rendering void all assignments of moneys to grow due unless the consent of the city was obtained]; it was inserted in the contract solely for the benefit of the city, and prevents any claim being asserted against it in the absence of consent."

The case of *Sacks* v. *Neptune Meter Co.* (144 Misc. 70) was one where an employee assigned his wages in violation of a stipulation prohibiting such, and is cited in the several briefs submitted by counsel here. In that case Mr. Justice FRANKENTHALER, in a concurring opinion, stated: "There is an important difference between an assignment of a contract itself and an assignment of a claim for moneys due under the contract. [Citing cases.] It is only the latter with which we are concerned here. * * * In *Manchester* v. *Kendall* (19 J. & S., 51 N. Y. Super. Ct. 460), which was affirmed by the Court of Appeals (103 N. Y. 638), a contract contained the provision that neither it nor any of the installments

to grow due under it were to be assigned. An installment not yet due was assigned to the plaintiff who brought the action after the installment became due. To the defendant's objection that the contract prohibited such an assignment, the court answered (p. 463): ' These words [prohibiting assignment] do not, on their face, attempt to prevent there coming into existence those things and rights, which when they exist, show there is something to which the law attributes the quality of assignability. There would be performance and a corresponding obligation to pay, in which Haas [the obligee] or his assignee would have a right of property. The words must be construed to mean, if they can be enforced, that Haas agrees not to assign, etc., and if he do, the appropriate consequence would be a claim for damages for a breach of the agreement. They would not make the assignment void.' In *Snyder* v. *City of New York* (*supra*) the agreement provided that neither the contract nor ' any of the moneys payable under this contract ' should be assigned unless by and with the written consent of the commissioner of public works. The Appellate Division, First Department, held that this was a ' restriction solely upon the assignment of the contract as such and not of the moneys earned thereunder which the city is bound to pay.' * * * The rule that a contractual prohibition of the assignment of a money claim does not void such an assignment is reinforced by the provision of section 41 of our Personal Property Law that ' any claim or demand can be transferred,' except in certain specified cases, none of which includes a situation where the contract giving rise to the claim prohibits the transfer. That this section is not to be construed as merely permissive in effect has been indicated by the Court of Appeals in the dictum by the present chief judge in *State Bank* v. *Central Mercantile Bank* (248 N. Y. 428, 435) that ' it might well be held that by the Personal Property Law of New York (sec. 41) the claim could be transferred even though the transfer was prohibited.' * * * Inasmuch as section 41 of the Personal Property Law specifically sets forth the exceptions to freely assignable claims it inferentially eliminates all other possible exceptions. The argument that an exception additional to those enumerated is to be implied where the transfer of a claim is prohibited by contract completely overlooks the fact that there would be even greater reason for implying such an exception in cases where a Federal or State statute prohibits the assignment and yet the Legislature deemed it necessary to specifically insert an exception in those instances and not rely upon implication. To say that it is incongruous to hold that the Legislature has invalidated private contracts prohibiting that which, in the case of public employees, it

has expressly prohibited by law, is to overlook the fact that our courts have held such private agreements invalid as against an assignee of a money claim and that the Legislature has merely strengthened the rule by giving its sanction to it. Even in the absence of section 41 the prohibition against assignment is ineffective against this plaintiff under the rule laid down by the authorities in this State. The argument that subdivision 3 of section 41 authorizes the defendant to assert the existence of the contractual prohibition as a defense against the assignee is based on the assumption that the prohibition is valid as against him, thus begging the very question which is presented for decision. Subdivision 3 gives no evidence of having been intended to do more than preserve the well-established rule that an assignee takes subject to all defenses. The prohibitory clause obviously could not be a defense existing against the transferrer, for the breach occurs only when the claim is assigned to a transferee. It cannot be a defense against the transferee unless created by the very act of assignment itself. As I interpret the authorities and subdivision 1 of section 41, the assignment does not create a defense against the transferee. * * *

" The contention that, by reason of the provisions of subdivision 3 of section 41 of the Personal Property Law, the assignee's only recourse is against his assignor, while it may represent the law in some States, is refused by the authorities in this State which have held that it is the debtor whose only recourse is against the assignor. (*Manchester* v. *Kendall, supra; Reliable Loan & Investment Co.* v. *Delgus Co., Inc., supra.*) "

As was said by Mr. Justice HOLMES in delivering the opinion of the court in the case of *Portuguese-American Bank* v. *Wells* (242 U. S. 7, 11): " There is a logical difficulty in putting another man into the relation of the covenantee to the covenantor, because the facts that give rise to the obligation are true only of the covenantee — a difficulty that has been met by the fiction of identity of person and in other ways not material here. Of course a covenantor is not to be held beyond his undertaking and he may make that as narrow as he likes. (*Arkansas Valley Smelting Co.* v. *Belden Mining Co.*, 127 U. S. 379.) But when he has incurred a debt, which is property in the hands of the creditor, it is a different thing to say that as between the creditor and a third person, the debtor can restrain his alienation of that, although he could not forbid the sale or pledge of other chattels."

No attempt was made here to assign the contract or any part thereof. What was intended to be assigned to both the plaintiff and to Zucker was money due or to become due under the terms of the contract. The testimony shows that the consideration of

the assignment to the plaintiff was the sum of $2,000 which was used in furtherance of the performance of the work for the completion of said contract, while Zucker performed actual and physical work in connection with said contract and received a partial payment on account thereof, leaving the balance now sought to be recovered in this action.

An exhaustive examination of the authorities cited by counsel in their several briefs and research otherwise has revealed no case determinative of the precise issue involved here. The dicta would seem to indicate that the assignment held by the plaintiff and the order in favor of defendant Zucker, which to all intents and purposes may be treated as an assignment, should be upheld; nor are they in violation of any of the provisions of section 41 of the Personal Property Law.

It seems to me, therefore, that notwithstanding both instruments were executed and filed prior to the date of the completion of the work on November 15, 1935, and that neither had the approval of the designated authority, they should be held valid as transferring to those respective parties certain portions of the fund concededly in the possession of the comptroller as the balance due under the contract as completed by the contractor.

In arriving at a determination in this case the court has not overlooked the fact that the contract under consideration was one for a public improvement, and that the funds for same were secured from the Federal authorities. No liens or assignments have been filed either with the Triborough Bridge authorities or elsewhere, other than those concerned in this proceeding and now before the court affecting contract No. 44, as conceded at the trial.

It is my opinion, therefore, that the respective claims and liens should be determined in the following manner: The plaintiff is awarded judgment against the defendant Triborough Bridge Authority in the sum of $2,000, with interest from September 25, 1935, and statutory costs to be paid out of the fund in the possession of the comptroller of the city of New York to the credit of contract No. 44.

The defendant Zucker Water & Sewer Service Corporation is awarded judgment against the Triborough Bridge Authority in the sum of $769.14, with interest from November 12, 1935, to be paid out of the fund above mentioned, and judgment against the defendant Max Hochman for the sum of $400, with interest from November 12, 1935, and statutory costs.

That the defendant Harold H. Tompkins is awarded judgment against the Triborough Bridge Authority in the sum of $575, with

interest from October 26, 1935, without costs as against said defendant, but with costs as against the defendant Max Hochman.

That the defendant Offenberg Brick Corporation is awarded judgment against the Triborough Bridge Authority in the sum of $110, without interest and no costs.

No additional allowance is made to any of the parties.

The counterclaim of the Triborough Bridge Authority against the plaintiff was withdrawn at the trial.

Submit findings.