EDITH Y. PRICE, Respondent, *v.* THE CITY OF NEW YORK, Appellant.

*Contract for the sale of coal — delay in making payments under monthly estimates — right of the contractor to consider it a breach of the contract — how far the estimates are conclusive — provision for a " written notice mailed " — when the mailing of a registered letter is not a compliance therewith.*

A contract for the sale and delivery of coal to the city of New York during the year 1902 provided that " the Engineer shall, from time to time, as the work progresses, but not oftener than once a month, make an estimate of the amount of coal delivered under this contract since the last preceding estimate was made and of the value thereof, according to the terms of this contract. Upon such estimate being made ninety per cent of such estimated value shall be paid to the Contractor."

On June thirtieth the engineer made an estimate and certificate showing the June deliveries. On July thirtieth he made a like estimate and certificate showing the July deliveries. On August twenty-eighth, at which time no payments had been made on the June and July estimates, the contractor notified the city that she had elected because of breach of the contract to terminate it.

*Held,* that if the contractor was entitled to payment on the June and July estimates, the delay in making such payment constituted a breach of the contract by the city which entitled the contractor to terminate the contract and recover for her past performance as evidenced by the estimates and certificates of the engineer;

That, in the absence of any claim that the coal certified by the engineer as delivered was not actually delivered or that there was any mistake as to the quantity or value in the estimates and certificates, such estimates and certificates were conclusive upon the parties.

Pursuant to a written clause of the contract providing for a " written notice mailed " to the contractor, the engineer deposited a registered letter in the post office. Such letter was addressed to " Mr. E. Y. Price," although the contractor's name was Edith Y. Price. The contractor went to the post office and attempted to obtain the letter on the ground that there was no " Mr. E. Y. Price " and that the letter was intended for her. She did not succeed in obtaining the letter which, after some lapse of time, was returned to the sender by the postal authorities.

*Held,* that the mailing of the notice under the circumstances did not satisfy the requirements of the contract.

APPEAL by the defendant, The City of New York, from a judg-ment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on the 14th day of July, 1904, upon the report of a referee.

*James D. Bell* [*Edward H. Wilson* and *John J. Delany* with him on the brief], for the appellant.

*George W. McKenzie* [*Charles E. Fiske* with him on the brief], for the respondent.

Judgment affirmed, with costs, on the opinion of Hon. WILLIAM J. CARR, Referee.

BARTLETT, WOODWARD, JENKS, RICH and MILLER, JJ., concurred.

The following is the opinion of Hon. WILLIAM J. CARR, Referee:

CARR, Referee:

In December, 1901, the parties to this action entered into a writ-ten contract providing for the delivery by the plaintiff to the defendant of coal in an approximately estimated quantity of 17,900 tons, to be delivered at various specified pumping stations of the defendant from time to time, throughout the year 1902. For the coal so delivered the defendant agreed to pay at the rate of three dollars and eighty-seven cents a ton. Clause J of the contract and paragraph 2 of the specifications, forming a part of the contract, provided that the delivery of coal should be "as directed by the Commissioner," and the plaintiff should "carry on such contract with such force and in such manner and order, and at such times and seasons as may from time to time be directed by the Engineer, it being understood that the rate of delivery as outlined in this con-tract is only approximate, and may be varied by the Engineer as he may deem necessary," etc.

Clause O of the contract provided in terms partly as follows: "That in order to enable the Contractor to prosecute the work advantageously, the Engineer shall, from time to time, as the work progresses, but not oftener than once a month, make an estimate of the amount of coal delivered under this contract since the last pre-ceding estimate was made and of the value thereof, according to the

terms of this contract. Upon such estimate being made ninety per cent of such estimated value shall be paid to the Contractor." This clause contained likewise a provision as to the certificate to be made by the engineer on complete performance of the contractor. The plaintiff entered upon the delivery of coal in January or February, 1902, and the engineer on February 28, 1902, gave an estimate and certificate as to the amount and value of coal delivered and ninety per cent of such value was paid to the plaintiff. A like estimate and certificate was given and a like payment made for coal delivered in March, April and May of the same year, less ten per cent retained payments.

Under this scheme of payment, the sum of $462.22 was retained under the February estimate; the sum of $379.52 under the March estimate; the sum of $547.28 under the April estimate, and the sum of $630.72 under the May estimate. On June thirtieth the engineer made an estimate and certificate showing deliveries in June of coal at the contract price of $3,284.12, and on July thirtieth a like estimate and certificate was made showing a delivery in July of coal at the contract price of $4,127.15. This was followed by a like estimate for August in the sum of $3,239.90.

The amount estimated for June was not paid in the whole or in part until August thirtieth, when ninety per cent was paid on account. The amount estimated for July and August has not been paid at all. On August twenty-eighth the plaintiff notified the defendant in writing that she claimed a breach of contract on the part of the defendant in failing to make payments on the June and July estimates, and that, because of said alleged breach, she elected to terminate the contract and would sue for the ten per cent retained on the previous payments and the value of the coal delivered in June, July and August. This action has been brought accordingly, the plaintiff making an allowance, against her claim, of the ninety per cent part payment on August 3, 1902, made on account of the June estimate. She asks judgment for the sum of $9,679.20, with interest from August 31, 1902. I am of opinion that the foregoing facts, alleged in the complaint and established by the evidence, constitute at least a *prima facie* cause of action for the plaintiff.

If the plaintiff was entitled to payment on the June and July estimates the delay and refusal on the part of the defendant con-

stituted such a breach of performance by the defendant as entitled her to terminate the contract and recover for her past performance as evidenced by the estimates and certificates of the engineers. (*Snyder* v. *City of New York,* 74 App. Div. 428; *Thomas* v. *Stewart,* 132 N. Y. 580; *Graf* v. *Cunningham,* 109 id. 369; *Wharton & Co.* v. *Winch,* 140 id. 287.)

The defendant claims, however, that the plaintiff was not entitled to any payment on account of the June, July or August estimates, because of alleged anterior breaches of performance on her account. There is no allegation in the answer that the estimates of the engineer were fraudulent and collusive. No claim is made that coal certified as delivered was not actually delivered, or that there was any mistake as to quantity or value in the estimates and certificates. Such being the case, the estimates and certificates may be said to be conclusive on the parties. (*Brady* v. *Mayor, etc., of New York,* 132 N. Y. 416; *Matter of Freel,* 148 id. 168; *Snyder* v. *City of New York,* 74 App. Div. 428; *O'Keeffe* v. *City of New York,* 173 N. Y. 478.)

The answer sets up affirmatively a specific breach on the part of the plaintiff upon which it bases a counterclaim for $13,964.19, with interest.

Assuming that the defendant is not bound on this point by the certificates and estimates of its engineers, it is not apparent that it has established any facts upon which the counterclaim is allowable. A general claim is made of breaches by the plaintiff anterior to the estimates of June, July and August, but no satisfactory evidence thereof has been offered except as to an alleged breach subsequent to July 16, 1902. At least substantial performance prior to that time is indisputable upon the evidence, and no claim of damage or material injury to the defendant has been proved or asserted as to anything occurring or omitted prior to July sixteenth. The specifications forming a part of the contract provide in part as follows: "That in case of failure on the part of the Contractor to deliver coal at the proper wharf, railroad station or switch in the quantities ordered and at the rate herein specified within fourteen (14) days (Sundays and holidays excluded) after the date of written notice mailed to him by the Engineer directing him that shipments of coal are desired, then and in that case the Commissioner shall have the

SECOND DEPARTMENT, APRIL, 1905.        [Vol. 104.

right to purchase such quantity of coal in the open market as may be required, and to deduct from any estimate that may be due the Contractor the additional cost of the said coal delivered at the railroad station, switch or pumping station where it may be required over and above the prices stipulated in the contract for coal at the said station."

On July sixteenth a letter from the engineer, dated July 16, 1902, addressed to "Mr. E. Y. Price, 13–21 Park Row, N. Y.," was deposited in the Brooklyn post office as a " registered letter." This letter required the delivery of specified quantities of coal at specific pumping stations, and gave notice that in case of non-delivery within fourteen days of its date the engineer would certify the fact to the commissioner in order that coal might be purchased in open market on the plaintiff's account under the provisions of the certificate. At this time the June estimate had been unpaid, and before the fourteen days specified in the letter (Sundays and holidays excepted) could expire, payment on the June estimate would have been one month in arrears. It is questionable whether payment on the June estimate could have been delayed properly, simply in anticipation of a possible breach under the notice of July sixteenth. The registered letter so mailed to "Mr. E. Y. Price" was not delivered through the mails, but after some lapse of time it was returned to the sender by the postal authorities. This identical letter was afterward, in September, 1902, sent by messenger to the plaintiff's office and there delivered. Between September first and December thirty-first the defendant bought coal in open market and charged the same to the plaintiff in the net amount of its counterclaim. It was conceded on the trial that the price paid by the city was the fair market price at the time, prices of coal having risen presumably because of the then pending "coal strike." As no coal was delivered by the plaintiff under this letter, the question arises whether at the expiration of fourteen days from July sixteenth, Sundays and holidays excepted, she was in such default as to justify the defendant in withholding payments previously earned under the engineer's estimates, and in purchasing coal in open market on her account. If so, then on August twenty-eighth she was in no legal position to justify her then attempt to terminate the contract.

The proof establishes without any contradiction that the regis-

tered letter was not delivered because the letter carrier would not leave it at the plaintiff's office without obtaining the prescribed receipt from the addressee, " Mr. E. Y. Price." Proof was offered that the plaintiff went to the New York post office and attempted to get the letter on the claim that there was no " Mr. E. Y. Price," and that it was intended for her, and that such attempt was unsuccessful. The defendant contends, however, that, having " mailed " the letter, as prescribed in the specifications, its duty had ended and that actual non-delivery thereof did not excuse the plaintiff, as the parties had deliberately contracted as to the method of the prescribed notice. (*Palmer* v. *Phœnix Mutual Life Ins. Co.*, 84 N. Y. 63; *Kenyon* v. *K. T. & M. M. A. Assn.*, 122 id. 247; *McCluskey* v. *National Life Assn.*, 77 Hun, 556; 28 N. Y. Supp. 931.)

Such unquestionably would be the rule if the mailing had been done in the ordinary manner, because, in that case, the sender would have parted with all control over the letter by its delivery to the mail authorities, as the agents of the addressee. Such is the theory of the decisions cited by the defendant.

Where, however, a letter is wrongly addressed or where the sender by affirmative act controls the circumstances of actual delivery to the addressee, and by such act prevents actual delivery, the principle of the rule asserted by the defendant would not apply necessarily. No reported decision is cited by either counsel which considers the question of mailing a registered letter as constituting in itself delivery. Independent research by the referee does not disclose any authority on the point. In *Gaffney* v. *Bigelow* (2 Abb. N. C. 311) the question arose as to proper service by mail of pleadings in an envelope on which was printed a direction to return in five days if not called for. The matter in the envelope was, however, delivered to the addressee in the usual course of business, but he returned the papers on the ground that the mailing was qualified by the direction to return. At Special Term his action was upheld, but the General Term reversed the court below on the theory " that the indorsement on the envelope to return in five days did not prejudice the party to whom it was addressed unless it was made to appear that, by reason of the return in obedience to the indorsement, the party failed to receive it. It appearing in this case

that the papers were received, notwithstanding the indorsement the order was reversed."

In the case at bar, however, the letter of July sixteenth was never delivered through the mails nor in any other manner prior to the plaintiff's attempt to terminate the contract on August 28, 1902. The apparent object of registering the letter of July sixteenth was to have affirmative evidence of its actual delivery. The United States Revised Statutes (§§ 3927, 3928) regulating the registry of mailed matter prescribe the taking of a receipt on the delivery of any registered mailed matter. This receipt is that of the addressee, presumptively.

Can a letter so "mailed" be said to have been "mailed" in the ordinary manner, so that in a case of actual non-delivery to the addressee, a delivery to the postal officers will suffice? The word "mailed" used in the specifications must be interpreted in its ordinary use and refer to mailing in the ordinary method of business.

Such, at least, is the common rule as to the interpretation of the language of written instruments. The letter was never received by the plaintiff through the mails because of the affirmative action of the defendant in its form of addressing the envelope and of registering it. The delivery of a letter to the postal authorities under these circumstances does not constitute them the agents of the plaintiff and is, at most, but a qualified delivery which restricts the actual receipt of the mail matter to well-understood conditions. I am of opinion that the plaintiff was not in default on August 28, 1902, and was then entitled to terminate the contract and recover all moneys earned up to that time under its provisions.

Under the circumstances of this case the plaintiff is entitled to recover without any final certificate of the engineer showing complete performance of the contract.