## FREUND v. A. SHAPIRO & SON.

(Circuit Court of Appeals, Third Circuit. March 2, 1925.)

No. 3256.

Sales ⊜194—Discontinuance of deliveries justified by defaults in payment.

Under a contract for sale of merchandise to be delivered in monthly installments, default in making payment for goods delivered justified the seller in refusing to make further shipments until payment was made, and the buyer cannot recover for breach of contract therefor.

Appeal from the District Court of the United States for the District of New Jersey; Joseph L. Bodine, Judge.

Louis R. Freund, receiver of N. Levine & Son Company appeals from an order of the District Court allowing the claim of A. Shapiro & Son against the receivership estate. Affirmed.

Philip J. Warner, of Newark, N. J., for appellant.

Joseph L. Smith, of Newark, N. J., for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. This is an appeal from an order of the District Court allowing a claim of A. Shapiro & Son, hereinafter called Shapiro, in insolvency proceedings against the N. Levine & Son Company, hereinafter called Levine. We do not have, and it seems impossible to get, the benefit of a brief from the appellant's counsel; but, as we understood the oral argument, the correctness of appellee's claim was conceded, but it was contended that appellant had a counterclaim exceeding in amount the claim of the appellee, and so that claim should not have been allowed for any amount. The argument was confined to this one point.

Shapiro sold to Levine under separate contracts August 5, 1919, and September 22, 1919, 175,000 yards of bed and mattress ticking to be delivered monthly as specified in the contracts. The dates for delivery were, however, changed by mutual consent. Some, but not all, the shipments had been made under these contracts, when, in the summer of 1920, Levine became financially embarrassed, and on September 7, 1920, consented to the appointment of a receiver. At that time it appears that Levine was indebted to Shapiro in the sum of $7,478.64. The claim for this amount was disallowed by the receiver on the ground that, since all the ticking had not been shipped in accordance with the terms of

the contracts, and the price of ticking in the meantime having advanced, Levine was entitled to the difference between the contract price and the market price, which exceeded the amount of Shapiro's claim. The District Judge reversed the order of the receiver and allowed the claim, on the ground that "the reason the seller refused to deliver other installments was that the buyer was in arrears in payments due for goods already supplied." The case is here on appeal from the order of the District Court.

It appears that in June, 1920, when the financial condition of Levine was becoming bad, Shapiro wrote him two letters on June 19, 1920, and in one said: "You owe us to-day a sum of about $7,000, which we consider to be a nice line of credit, and the only reason we have not completed your orders in full was because the amount would be so very large, and we have thought much better to spread deliveries for say two or three months."

In the other letter he said: "We again call your kind attention to invoices rendered to you March 22d and April 15th. As far as our records show, there was no delay in shipping of those goods, and therefore those invoices were due in May and June. Kindly send us check by return mail."

Shapiro wrote Levine again on August 2, 1920, as follows: "We have again telephoned you to-day, and have practically been telephoning you daily for the past week or so about your past-due account, but have not as yet succeeded in getting any definite answer, as we were always told that you were not at the office. Now, Mr. Levine, please take note that we insist on getting check immediately for our past-due invoices, or we shall be compelled to take other steps in collecting same."

The facts stated in these letters are in no way disputed. When Levine was in an embarrassed financial condition, and probably then actually insolvent, Shapiro refused to ship more merchandise until the overdue bills were paid, but offered to ship any amount if payments were anticipated. Payment of overdue bills and anticipation of future shipments were both refused, and so Shapiro declined to ship more merchandise. In view of the financial condition of Levine, and his failure and refusal to pay bills overdue under these divisible contracts (Pope v. Porter, 102 N. Y. 376, 7 N. E. 304; McLaughlin v. Hess, 164 Pa. 570, 30 A. 491), the refusal to make further shipments and the requirement of anticipated payments were both wise and within Shapiro's legal rights (Price v.

New York, 104 App. Div. 198, 93 N. Y. S. 967; Rugg v. Moore, 110 Pa. 236, 1 A. 320; Stephenson v. Cady, 117 Mass. 6; Hull Coal & Coke Co. v. Empire Coal & Coke Co., 113 F. 256, 51 C. C. A. 213; Roehm v. Horst, 178 U. S. 1, 20, 20 S. Ct. 780, 44 L. Ed. 953). Therefore the claim was properly allowed, and the counterclaim disallowed.

The decree of the District Court is affirmed.