OLYMPIC ASSETS, INC., Landlord, *v.* FREDERIC H. HATCH & Co., INC., Tenant.*

Municipal Court of the City of New York, Borough of Manhattan, June 16, 1955.

---

* See, also, *Zebu Realty Corp.* v. *Great Penny Store*, 208 Misc. 8.

*William M. Kufeld* for landlord.

*Henry N. Ess, III,* for tenant.

WAHL, J.   This is a holdover proceeding instituted by the landlord to evict the tenant from business premises at 63 Wall Street, New York, N. Y. on the grounds that the tenant has held over after agreeing in writing to vacate the premises. The proceeding is based upon subdivision (g) of section 8 of the Business Rent Law of the State of New York.   (L. 1945, ch. 314, as amd.)   The facts were stipulated and submitted to this court for determination.

On April 29, 1954, one day before the expiration of the tenant's lease on the premises, the tenant entered into a new lease with the landlord's predecessor in interest, the Wall and Hanover Street Realty Company.   Under this new lease the premises were hired for a further period extending from May 1, 1954, to April 30, 1955, on the same terms and conditions as then existed, except that the annual rental was increased.   The new lease was negotiated in the same way as leases between the parties in past years had been negotiated.   No mention was made of the "surrender" clause upon which the landlord here relies.   The tenant has been in continuous occupancy of substantially the same premises since the year 1929, under leases for consecutive terms.

Among the terms of the lease dated April 29, 1954, was the following article: "Fifth: Said Tenant shall take good care of the premises and fixtures, make good any injury or breakage done by the Tenant or agents, clerks, servants, or visitors of the Tenant, and any damage caused by the overflow or escape of water, steam, gas, or other substance resulting from the negligence of the Tenant or agents, clerks, servants, or visitors of the Tenant.   The Tenant shall quit and surrender said premises at the end of said term in as good condition as the reasonable use thereof will permit, and shall not make any alterations, additions, or improvements in said premises without the written consent of said Landlord; and all alterations, partitions," etc.

On May 4, 1955, the landlord notified the tenant that the lease dated April 29, 1954, had expired, that the landlord did not intend to renew it, and that the tenant should vacate the premises without further delay. The tenant replied on May 5, 1955, that it intended to remain in the premises as a statutory tenant.

The landlord's petition is founded on the ingenious argument that the language of article Fifth that: '' The Tenant shall quit and surrender said premises at the end of said term in as good condition as the reasonable use thereof will permit '' was an '' agreement * * * to terminate * * * occupancy '' of the kind contemplated by the Legislature in enacting subdivision (g) of section 8 of the Business (or Commercial) Rent Laws. (L. 1945, ch. 314; L. 1945, ch. 3, as amd.)

The tenant contends that the Legislature did not intend such clauses, which are found in most business and commercial leases (as well as in the real estate board of New York standard form of office lease), to constitute '' agreements to terminate occupancy '' within the meaning of subdivision (g) of section 8, and thus to operate as waivers of the protection of the anti-eviction provisions of the Emergency Rent Laws.

The sole issue is one of law: Does the '' surrender '' agreement contained in tenant's lease constitute an agreement to vacate pursuant to subdivision (g) of section 8 of the Business Rent Law?

The landlord does not come within any of the provisions of subdivision (g) of section 8 authorizing eviction proceedings. The lease made on April 29, 1954, was an agreement to extend the existing tenancy rather than an agreement to terminate occupancy. The tenant's covenant to quit the premises at the end of the term does not constitute a waiver of its rights as a statutory tenant; nor does it appear that such waiver was ever contemplated by the parties, or by the Legislature in enacting subdivision (g) of section 8 and the amendments thereto. The covenant to quit at the end of the term, an integral part of any written lease, is neither an agreement to vacate under that part of subdivision (g) of section 8 which applies to a tenant in possession '' under an expired lease or tenancy or as a monthly or statutory tenant '', nor is it an agreement to vacate under the second part which is applicable to a tenant in possession under an '' unexpired lease '' who '' agrees in writing, by an agreement executed not less than three months after the commencement of the term thereof to terminate his occupancy at any time before or after expiration of the term of such lease.'' No agreement to vacate was made by the tenant here three

months after the commencement of the term of the last lease which expired April 30, 1955, and under which lease it was in possession of the space. (*Steinberg* v. *Forest Hills Golf Range*, 199 Misc. 128, mod. 278 App. Div. 856, mod. 303 N. Y. 577; *Triboro Parking* v. *Blomeier*, 203 Misc. 202. See, also, the scholarly commentary by Irving L. Kalish, Esq. in N. Y. L. J., June 6, 1955, p. 4, cols. 1–4 entitled '' Decontrol of Business Space upon Termination of Written Lease.'')

It is necessary to remember that in applying rules of statutory construction, we must avoid interpretations which may reach an illogic never intended by the Legislature. The landlord's interpretation of subdivision (g) of section 8 overlooks the legislative intent that in order for a landlord to qualify under the subdivision, the tenant's agreement to vacate must be a clear expression of a voluntary act on the part of the tenant in giving up all of his statutory rights. The law so zealously regards these rights of the tenant that the act expressly provides he may not waive them. (L. 1945, ch. 314, § 12, as amd.)

It should be noted that in both the first part of subdivision (g) of section 8 with respect to expired leases and the second part with respect to unexpired leases, the subdivision has reference to statutory tenants though it is expressly mentioned in the first part. It is fair to assume that the Legislature had in mind in enacting the section and later amending it that there was to be a distinction between the statutory tenants in the first part and in the second part as to treatment. The logical conclusion, therefore, appears to be that the first part applies to statutory tenants where the lease agreements have expired, whether they were for a term of years, monthly, month to month or otherwise and the tenant is in possession only by virtue of the rent laws; the second applies to tenants who are in possession under an unexpired lease having a further term to run and who are also statutory tenants. The language '' unexpired lease '', therefore, has reference to the last lease with the tenant and alludes to the '' commencement of the term thereof '', and not a prior written lease which has expired. The interpretation by the landlord would only reach an absurd result never intended by the Legislature. The freedom of contract would in reality become an '' illusory concept '', and the declaration of public emergency set forth in the act (L. 1945, ch. 314, § 1, as amd.), would merely be empty words.

Therefore, I conclude that in view of the rationale in *Steinberg* v. *Forest Hills Golf Range* (*supra*), I am constrained to find for the tenant herein.