Abraham R. Margulies, J.
In this landlord and tenant proceeding the landlord is seeking to oust the tenant on the theory that the tenant is a month to month tenant, and is holding over and continues in possession without the landlord’s permission by reason of the second portion of subdivision (g) of section 8 of the Commercial Rent Law (L. 1945, ch. 3, as amd.). Said pertinent portion reads as follows: “a tenant in possession under a lease not yet expired agrees in writing by agreement executed not less than three months after the commencement of the term thereof, to terminate his occupancy at any time before or after expiration of the term of such lease ”.
*893 The 30-day notice served upon the tenant, and dated February 25, 1957, addressed to the tenant as “ occupying a portion of the basement space in the building known as 37-02 and 37-42 Northern Boulevard, Borough of Queens, New York City,” and terminates the alleged monthly tenancy as of April 1, 1957. The lease in question, dated January 25, 1951, for the term commencing July 1, 1951, and to end on the 30th day of June, 1954 contains the following typewritten clause:
“ 38th. Upon the expiration or other termination of the term of this lease, Tenant shall quit and surrender to Landlord the demised premises, broom clean, in good order and condition, ordinary wear and damage by fire, irrespective of the cause, thereof, excepted. Tenant shall remove all property of Tenant as directed by Landlord.
“ If the last day of this lease or any renewal thereof fall on Sunday this lease shall expire on the business day immediately preceding. Tenant’s obligation to observe or perform this covenant shall survive the expiration or other termination of this lease.”
The tenant or tenant’s predecessor had occupied considerable space in the landlord’s building since 1940, but all other space other than the basement space was occupied by leases in writing expiring January 31,1951, modified on June 22,1950, providing extensions to September 30, 1951. The tenant on December 21, 1951, wrote the following letter to the landlord’s attorney:
December 21, 1951
“A. J. Goldstein & Co.,
130 Cedar Street New York 6, N. Y.
Att. Mr. McKenny Dear Mr. McKenny:
This is to inform you that we are vacating these Premises by December 31st in accordance with our lease.
I wish to express my appreciation and thanks for the many favors and considerations extended to us as a landlord, and now that I am to become a landlord I hope that my tenants will have the nice things to say about me as I have for you.
Seasons Greetings and kindest regards to you and Mr. Gold-stein, Jr.
Sincerely,
Speed Products Co., Inc. s/ Jack Linsky Jack Linsky
JL:dm President”
*894 The tenant pursuant to the notice vacated all of the space on December 31, 1951, then occupied by the tenant with the exception of part of the basement space, which space is the subject matter of this proceeding. The lease above referred to, dated January 25, 1951, is with respect to part of the basement space only. At the time of the expiration of the said lease, namely June 30, 1954, the tenant remained in possession, and the landlord accepted rent commencing July 1, 1954, all during the balance of that year and continued to do so until February, 1957, when the landlord served the tenant with a 30-day notice which has been previously mentioned.
The general rule appears to be that subdivision (g) of section 8 of the Commercial Rent Law contemplates an agreement in writing other than a quit and surrender clause in a printed lease (Olympic Assets v. Hatch & Co., 208 Misc. 12, affd. 1 Misc 2d 653; Fischel v. Steel Management Co., 286 App. Div. 780).
However, in the case of City Bank Farmers Trust Co. v. Rival Shoe Co. (198 Misc. 1002, affd. 279 App. Div. 1059) the court held that a quit and surrender clause in a lease could be enforced under said subdivision (g). Here from the other terms of the lease it was clear that the parties were contracting for a surrender under a certain contingency. In the lease involved in aforesaid case the landlord had the right to terminate the lease on a bona fide sale of the property by giving 90 days’ notice to the tenant and the payment of a consideration.
The landlord contends in the instant case that the parties contemplated a surrender by reason of conferences, competent counsel, many leases and modifications thereof, all showing a course of conduct, and that the printed quit and surrender clause was deleted and a typewritten clause substituted, contending that the tenant was at all times conscious of its acts and dealings, and its agreements and undertakings were unequivocal.
It might be enlightening at this point to discuss the difference between a holdover tenancy and a statutory tenancy. It is conceded that prior to that date no agreement was entered into between the landlord and tenant modifying in any way the terms of the lease, and no notice was served by the landlord upon the tenant in conformance with the terms of the lease amending in any way the term of the lease, and the lease was then continued beyond June 30, 1954. In the event the property was controlled property and the landlord accepted rent on July 1, 1954, and has continued to do so until February, 1957, the tenant became a statutory tenant (Stern v. Equitable Trust *895 Co., 238 N. Y. 267) and in view of that fact no 30-day notice was necessary.
If at the expiration of the lease on June 30, 1954, the property was decontrolled property, the tenant became a holdover tenant for another year with the term expiring June 30, 1955, and when the landlord accepted rent July 1, 1955, the tenant became a holdover tenant until June 30, 1956, and when the landlord accepted rent July 1, 1956, the tenant became a holdover tenant until June 30, 1957. (Haynes v. Aldrich, 133 N. Y. 287.) So in either event, whether the tenant became a statutory tenant or a holdover tenant the 30-day notice served upon the tenant has no legal force and effect. As stated previously, if the landlord desired to amend the terms of either the holdover tenancy or the statutory tenancy, such terms could only be changed by an agreement in writing between the parties or a notice properly sent or served upon the tenant prior to June 30, 1954. (Stern & Co. v. Avedon & Co., 194 App. Div. 433, affd. 231 N. Y. 546.)
It appears the premises in question have been subject to the emergency rent laws (Commercial Rent Law, § 8, subds. [c], [d]; L. 1945, chs. 3, 315, as amd.). Without dispute the tenant was in possession under continuous written leases from January 1, 1946, to June 30, 1954; there being no proof before the court that the premises became decontrolled on the expiration of the lease on June 30,1954, the tenant became a statutory tenant. (Stern v. Equitable Trust Co., supra; Lewittes & Sons v. Spielmann, 190 Misc. 35.) It was conceded during the trial that the facts in this case on the landlord’s contention do not contemplate the application of the first sentence of subdivision (g) of section 8 of the Commercial Rent Law, and it is further conceded that no agreement in writing or notification by the landlord was given to the tenant. The letter of December 21, 1951, quoted previously, does not meet the requirements of the section. In addition, it would appear in the language of the lease that the letter referred to leases in the other portion of the building and certainly not to the basement space in view of the fact that after the letter of December 21,1951, the tenant vacated the other space occupied by it in the building but continued to hold possession of the basement space.
The landlord contends that paragraph 38th of the lease quoted above gives the landlord the right to make the tenant a month to month tenant and that that paragraph is projected into the tenancy after the expiration of the lease, June 30, 1954 (Adler’s Son v. Front Line Sweaters, 195 Misc. 352) and therefore the landlord could exercise the right to terminate the lease at any time.
*896 Counsel for the landlord loses sight of the fact that the termination of the lease as of June 30, 1954, as stated previously, once the landlord accepted rent on July 1, 1954, the tenant either became a holdover tenant or a statutory tenant, and in either event the tenant did not become a month to month tenant, and a 30-day notice would not apply. It must be kept in mind also that only such terms of the lease agreement are projected into a statutory tenancy which are not inconsistent with the emergency rent laws. (Shelton Bldg. Corp. v. Baggett, 188 Misc. 709.)
The petition of the landlord, therefore, is dismissed without determining, however, what the rights of the landlord may be; whether he should bring another proceeding after July 1, 1957, on the theory that the tenant is holding over, or should bring any other proceeding as advised under sections of the Commercial Rent Law.