Maurice Wahl, J.
The landlord herein seeks a final order claiming (a) that tenant’s occupancy under a lease has been terminated by due notice in writing; (b) that the present structure is to be demolished and that a new structure is to be erected, viz.: an art museum, for which plans have been duly approved; (c) that the tenant’s lease has come to an end and it holds over without the landlord’s permission.
The record reveals that tenant entered into a lease with the owner of the fee, Anfa Realty Co., Inc. on or about January 18, 1952, whereby tenant hired the demised premises, being store and basement known as 1789 Broadway, New York County, for a term of five years, commencing January 1, 1952 and terminating December 31, 1956. Thereafter, the same parties entered into an extension agreement on or about November 26, 1954, whereby the aforesaid lease was extended for an additional term of eight years, commencing January 1, 1957 and terminating December 31, 1964, upon the same terms and conditions as are contained in the January 18, 1952 lease, with some nonrelevant modifications.
The landlord served a written notice, dated January 30, 1959, by registered mail, invoking clause 39 of the lease. This clause *1057 vested in the landlord the right to terminate the lease, .upon giving tenant not less than 90 days’ notice of intention to cancel; said notice to be sent to tenant by registered mail at Whitman, Mass. The notice fixed April 30, 1959 as the surrender date and termination date of the tenancy. The notice gave plain notice that the landlord intends to demolish the building of which demised premises form a part and that a new building was to be constructed. Clause 39, above referred to, vests the right in landlord to terminate the lease as therein stipulated, provided that the ‘ ‘ building of which the demised premises form a part is to be demolished or substantially altered into a new office building, or ’ ’. The balance of clause 39 is not relevant herein.
Tenant’s answer alleges that it has occupied the demised premises for a period of years prior to June 1, 1944, the freeze date under the Business Rent Law (L. 1945, ch. 314, as amd.), and that is a conceded fact.
The evidence indicates that the landlord intends to construct a new building for which plans have been duly approved by the proper authorities.
At the outset, the question is whether the lease has been properly terminated in the method required by the covenant in question.
Clause 39 provides that landlord may cancel the lease, ‘1 by giving to the Tenant notice of not less than ninety days of its intention to so cancel and terminate the same, said notice to be given to the Tenant by registered mail at Whitman, Mass.”.
Clause 37 provides, so far as material, ‘ ‘ All notices to the Tenant shall be sent by registered mail, addressed to it at 401 South Avenue, Whitman, Massachusetts ”. At the trial tenant produced the registered mail envelope in which the notice of cancellation had been posted. Concededly, tenant received the mail, albeit it claims not until February 2, 1959. No proof was adduced to show that this mail had been in any way misdirected or delayed. The court holds that the notice of cancellation was properly addressed. There remains but the question, ‘6 Did tenant receive not less than 90 days notice?” This notice is dated and was mailed to tenant on January 30,1959, terminating the lease term on April 30, 1959. Since tenant claims it did not receive the notice until February 2, 1959, then there was less than 90 days’ notice.
The lease provides in clause 32, among other things, that ‘ ‘ notice * * * including any notice of expiration * * * sent by registered mail * * * and the time * * * shall *1058 he deemed to be the time when the same is * * * mailed ”. When clauses 32, 37 and 39 of the lease are read in pari materia, as they must, it at once becomes clear the notice is sufficient and timely. This accords with section 20 of the General Construction Law; see, also, Pomeranz v. More (187 Misc. 383).
The contract between the parties does not require that the time be computed from receipt of the notice; on the contrary, it merely provides that “ the time * * * shall be deemed to be the time when the same is * * * mailed. ’ ’ (Emphasis supplied.) That is sufficient and the court so holds (Price v. City of New York, 104 App. Div. 198). Furthermore, under rule 20 of the Rules of Civil Practice where proof is made of the enclosure in a postpaid envelope, deposited in the mailbox, delivery is presumed and service is effected on mailing date and not the date of receipt (Desroches v. Caron, 11 Misc 2d 838).
The tenant’s second contention that the right of cancellation herein is unenforcible under subdivision (g) of section 8 of the Business Rent Law is untenable.
Clause 39 of the lease states that after notice of cancellation by landlord, as therein required, and the “ expiration of the time therein fixed, this lease and the term thereby demised shall terminate and come to an end * * * and the Tenant shall forthwith surrender possession of the demised premises to the landlord.”
This clause is separate and apart from printed clause 26. This latter clause has reference to the quitting and surrendering of the demised premises “broom clean”, etc. Thus, my prior holding in Olympic Assets v. Hatch & Co. (208 Misc. 12, affd. 1 Misc 2d 653) is distinguishable on the facts and inapplicable here.
Tenant’s position that lack of a date certain fails to meet the requirement of subdivision (g) of section 8 is groundless. There are two facets to this section, (a) where tenant agrees to vacate on a date certain, or (b) gives notice of intention to vacate on a date certain. The other facet is where there is a cancellation clause on landlord’s part and upon giving of such notice a date certain is fixed therein. In the case at bar, when landlord gave the 90 days’ notice of cancellation, it fixed the termination date as of April 30, 1959, which is a date certain within the meaning of the statute. There is no question but that the notice terminated the contract of lease. (Gilpin v. Mutual Life Ins. Co., 64 N. Y. S. 2d 436, revd. 271 App. Div. 499, revd. 299 N. Y. 253, motion to amend remittitur denied 301 N. Y. 371; Steinberg v. Forest Hills Golf Range, 303 N. Y. *1059 577, motion for reargument on new trial denied 303 N. Y. 1006 [there the court permitted the cancellation, but refused possession, as there was no surrender agreement under subdivision (g) of section 8].)
Tenant’s reliance on Triboro Parking v. Blomeier (203 Misc. 202) is mistaken, as that case involved a statutory tenant under an expired lease, whereas in the case at bar, we have an unexpired lease; furthermore, that case involved a combined residential and business space occupancy and under Morse & Grossman v. Acker & Co. (297 N. Y. 304); Kauffman S Sons Saddlery Co. v. Miller (298 N. Y. 38) an eviction from only a portion of the premises is not permissible.
Tenant further contends that the mechanics under subdivision (g) of section 8 require that the agreement in writing be executed not less than three months after the commencement of the term thereof; and since clause 39 herein is coincidental with the commencement of the term, the statutory requirement is lacking. Tenant, however, overlooks the fact that on November 26, 1954, more than three months after the commencement of the term, and before expiration of the lease, an extension agreement was executed between the parties upon the same terms and conditions as contained in the January 18, 1952 lease, with some nonrelevant modifications. Thus, the statutory requirement is clearly met, even if it required that a separate written agreement were required. (City Bank Farmers Trust Co. v. Rival Shoe Co., 198 Misc. 1002, affd. 279 App. Div. 1059.)
The tenant’s third contention, strenuously advanced on the trial and in its brief is that clause 39 requires that not only must there be a demolition, but it must be followed by a new construction, viz. a new office building; and that the erection of a new art museum does not satisfy the conditional limitation or proscription contained in the cancellation clause. The short answer is that the clause is written in the disjunctive and therefore each phrase is separable and distinct. This is so, irrespective of lack of punctuation marks. This clause is interpreted consonant with subdivision (ec) of section 8 of the law. The statute and the clause are read in pari materia-, and so read, the meaning is patently clear. Section 365 of Book 1 of McKinney’s Consolidated Laws of New York makes it obvious that the word “ or ” is often misused. The rule enunciated is that if an interpretation is required, the “ or ” may be ‘1 and ’ ’ and it may be vice versa. Here there exists no doubt in the court’s mind that “ or ” as used in clause 39 is in the disjunctive, and thus makes clear the intention of the parties and the *1060 meaning intended. The statute does not define the type, size or nature of the new building. (Bond Stores v. Deutsch, 274 App. Div. 386, motion for leave to appeal denied 274 App. Div. 927; Empire State v. Graceline Handbags, 87 N. Y. S. 2d 319; Noyes v. Rothfeld, 191 Misc. 672, affd. without opinion 191 Misc. 672.) That plans have been approved for a new building at an estimated cost of $1,100,000 is beyond question.
Finally, the tenant presses the argument that the emergency is aggravated rather than alleviated by the instant demolition and erection of the proposed new building, and urges that the legislative intent is to freeze tenant’s occupancy, whose tenure is statutory, and to prohibit ousters where improvements are sought such as demolitions and new constructions, unless only more business space is created. That, however, is not the norm of the statute. This emergency statute is now about 16 years old, and has been increasingly emasculated by the Legislature, to meet changing conditions, pressures from various sources, and relief afforded by vast new construction. Doubt exists as to whether the police power may much longer be exercised to maintain these emergency statutes as they relate to commercial and business space. In Lincoln Bldg. Associates v. Barr (1 N Y 2d 413, 420, appeal dismissed 355 U. S. 12) the divided court hesitatingly sustained the validity of the statute, but warned that “In no way is it [the court’s decision] determinative of the constitutionality of office space controls in any later year. Bent controls, all will agree, ought not achieve a status of permanence in our economy. They have no justification except in periods of emergency. * # * Whether and for how long the Legislature may lawfully continue office rent control must, and shall, be a question open for future review.” (Insert supplied.) The court feels that consistent with that expression by our highest court, interpretation of these statutes tends towards an eventual decontrol. Each renewal by the Legislature of these statutes brings a softening of the rigid requirements.
The court takes judicial notice that New York City is one of the world’s great centers of art, music, culture and entertainment. The area where the instant property is located was only recently cleared of slums and the magnificent Coliseum erected. Not far away, the new Lincoln Center development is being constructed. A new opera house, a law school, the Philharmonic Society and other cultural and artistic endeavors will be housed there. Landlord’s projected contribution here is and will be a welcome contribution to the people of the city and all its visitors. In an ever expanding and kaleidoscopic change, social *1061 welfare and progress must take place. In such an evolution certain private rights must be subordinated to the demands and needs of many.
Final order for the landlord, the issuance of the warrant is stayed until January 31, 1960, provided tenant shall pay each month of its possession for use and occupation, a rental equal to that reserved in the now cancelled lease. The court finds that amount is fair and reasonable.